# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends of Lackawanna;                         :
Joseph James and Mari May;                     :
Edward and Beverly Mizanty;                    :
and Katherine Spanish and Todd                 :
Spanish,                                       :
                       Appellants      :
                                               :
             v.                :   No. 656 C.D. 2017
                                               :   Argued: April 10, 2018
Dunmore Borough Zoning Hearing                 :
Board and Dunmore Borough;                     :
Keystone Sanitary Landfill, Inc.;              :
F&L Realty Corporation; F&L                     :
Realty, Inc.; Keystone Company                 :
and Keystone Landfill, Inc.                     :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**            **FILED: May 7, 2018**

## I. Introduction

In this zoning appeal, the Friends of Lackawanna (FOL) and individual citizens Joseph James and Mari May, Edward and Beverly Mizanty, and Katherine and Todd Spanish (Individual Objectors) (collectively, Objectors) seek review of an order of the Court of Common Pleas of Lackawanna County[1] (trial court) dismissing their appeal from a decision of the Dunmore Borough (Borough) Zoning Hearing Board (Board). The Board denied Objectors' appeal of the Borough's Zoning

---

[1] Following a full-bench disqualification and recusal by the trial court, the Administrative Office of Pennsylvania Courts assigned a visiting senior judge to preside in this case. See Reproduced Record (R.R.) at 2106a-09a.

Officer's preliminary opinion that a landfill's proposed upward expansion did not violate the applicable building height limitations in the Borough's Zoning Ordinance (Zoning Ordinance).  In particular, the Board determined Objectors lacked standing to appeal the Board's decision.  Objectors appealed to the trial court, which agreed with the Board on the standing issue and granted Appellees Keystone Sanitary Landfill, Inc., F&L Realty Corporation, F&L Realty, Inc., Keystone Company, and Keystone Landfill, Inc.'s  (collectively, Keystone) motion to dismiss or strike Objectors' appeal.  Consequently, the trial court did not reach the merits of Objectors' appeal.

In their brief to this Court, however, Objectors address both the standing issue and the Board's decision on the merits.  In response, Keystone filed an application for relief seeking to strike portions of Objectors' brief pertaining to the merits of their appeal.  This Court granted Keystone's application and entered an order striking the portion of Objector's brief, beginning at Heading B on page 44 and continuing through page 60, pertaining to the merits of the Board's decision.  See Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd. (Pa. Cmwlth., No. 656 C.D. 2017, filed Oct. 16, 2017).  Therefore, our review is limited to determining whether the Board erred in concluding that Objectors lacked the requisite standing to appeal the Board's decision.  Upon review, we reverse the order of the trial court and remand for a decision on the merits of Objectors' appeal.

## II. Background

2

Keystone owns and operates a 714-acre sanitary landfill partially located in the Borough and partially located in neighboring Throop Borough. In the Borough, Keystone's property consists of 398 acres and is located in an M-1 (Light Manufacturing) District. Notably, the landfill is an existing, permitted conditional use in the M-1 District. It is regulated by the Pennsylvania Department of Environmental Protection (DEP) pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101)[2] and the Solid Waste Management Act (SWMA).[3] It is currently operating under a Phase II Major Permit Modification.

In 2014, Keystone submitted an application to DEP to utilize 216 acres, within the pre-existing 714-acre permit area, as a Phase III Major Permit Modification (Phase III).

Objectors include FOL, a nonprofit corporation with a registered business address in the Borough. FOL asserts that it has 51 members.

Individual Objectors are members of FOL and live in the Swinick Development. Their properties do not border the landfill site, but are located within a quarter-mile to a half-mile from the landfill and approximately 3,110 and 4,473 feet from the proposed expansion area. An interstate highway and major highway interchange separate Individual Objectors' properties from the landfill site.

---

[2] Act of July 28, 1988, P.L. 556, as amended, 53 P.S. §§4000.101- 4000.1904.

[3] Act of July 7, 1980, P.L. 380, as amended, 35 P.S. §§6018.101- 6018.10003.

In November 2014, Keystone filed a request for a preliminary opinion from the Zoning Officer pursuant to Section 916.2 of the Municipalities Planning Code (MPC), 53 P.S. §10916.2.[4] Keystone requested an opinion as to whether the proposed Phase III expansion would be in compliance with the Zoning Ordinance. In particular, Keystone sought an opinion as to whether the Zoning Ordinance's building height requirements applied to the landfill.

The Zoning Officer issued an opinion that Phase III would be in compliance with the Zoning Ordinance. See Reproduced Record (R.R.) at 120a-31a. Essentially, the Zoning Officer reasoned that the Zoning Ordinance's definitions of "building" and "building height" pertain to structures with a roof supported by columns or walls. Id. at 130a. Keystone's sanitary landfill, the Zoning Officer observed, "lacks walls and columns, and of particular note there is no roof." Id. Thus, the Zoning Officer deemed the building height requirement inapplicable.

Objectors appealed to the Board and challenged the Zoning Officer's opinion. Before the Board, Objectors argued that the landfill constituted a structure under the Zoning Ordinance.

At the first Board hearing, Keystone moved to dismiss Objectors' appeal on the ground that they lack standing to appeal the Zoning Officer's preliminary opinion. The Board deferred ruling on the motion and provided Objectors an opportunity to present testimony and evidence on the standing issue.

---

[4] Act of July 31, 1968, P.L. 805, as amended, added by the Act of December 21, 1988, P.L. 1329.

4

Individual Objectors Joseph May, Edward Mizanty, and Katherine Spanish, testified. Objector May testified he resided in the Swinick Development since 1983, when he lived with his parents. In 2008, he inherited his mother's house, where he currently lives. May testified his residence is on Shirley Lane, less than a quarter-mile from the landfill. May always smells a pungent odor coming from the landfill. R.R. at 280a-81a. May also testified as to constant dust from the landfill in the neighborhood, and seagull droppings all over his property. These nuisances require constant maintenance. Id. at 286a-87a. May also observed Borough trash trucks passing through his development, usually on the way to the landfill. Id. at 288a. However, May also observed dump trucks carrying waste entering and leaving the Apex Waste Management transfer facility, a different facility unrelated to Keystone. Id. at 305a-06a.

Objector Edward Mizanty owns residential property on Reeves Street in the Swinick Development. He and his family lived there since 1989. Id. at 309a. Mizanty testified his property is approximately a quarter-mile from the landfill. Id. Mizanty can see the landfill from his back deck and dining room window. Id. at 310a. He testified that the landfill "went vertical over the years." Id. In addition to smelling the landfill while walking around the development, Mizanty can also smell the landfill from the house. Id. at 312a. He described the smell as a "pungent smell, garbage, rotting garbage." Id. The smell is worse during the warmer months, especially the summer. Id. The closer he walks toward the landfill, the stronger the odor becomes. Id. at 313a. Mizanty also testified he can see trash trucks driving through the development. Id. at 314a. However, Mizanty was unaware of the

5

presence of the Apex Waste Management transfer facility, which is located closer to his property than the landfill. Id. at 319a.

Objector Katherine Spanish owns residential property located on West Swinick Drive in the Swinick Development. Id. at 411a. Spanish grew up in that house; she now lives there with her husband and children. Id. at 412a. Spanish estimated that her property is about a half-mile from the landfill. Id. at 413a. When Spanish purchased the home from her parents in 2010, her understanding was that the landfill had 10 years remaining in its life span. Id. at 413a-14a. Spanish testified she could smell the landfill when she moved into the house in 2010. Id. at 414a-17a. It is a sour pungent smell that gets worse during the warmer months. Id. Spanish's children attend a daycare that is even closer to the landfill. Id. Spanish also expressed concerns over local newspaper reports of leachate leaking from the landfill and the possibility of subsurface mine fires and landslides. Id. at 418a. Spanish also testified she observed trash trucks in her neighborhood on the way to the landfill. Id. at 419a. Spanish is also an FOL board member. Id.

With regard to its standing as an organization, FOL presented testimony from Patrick Clark (FOL Witness). He identified FOL as a nonprofit entity formed in October 2014 representing area citizens opposed to the expansion of Keystone's landfill. Id. at 324a. FOL Witness expressed concerns about the Phase III expansion regarding health and environmental issues. Id. at 327a. FOL requested air quality tests from the Department of Health that were not performed. Id. at 328a. FOL's concerns include harm from leachate leakage into the groundwater and air quality. FOL Witness testified the proposed expansion would be detrimental to the

economics of the area and the Borough's reputation. In short, FOL Witness believed people and businesses would not want to move to the area if the landfill expanded. An industrial park close to the landfill is nearly vacant. Id. at 328a.

FOL Witness further testified that FOL met with Senator Robert Casey, State Representative Frank A. Farina and State Senator John Blake regarding the proposed expansion. Id. at 333a. FOL also attends DEP meetings and reviews documents and records obtained from DEP regarding the landfill. Id. at 334a. These documents identify the Swinick Development as an area to be monitored for odors. Id. at 336a.

In response, Keystone presented testimony and documentary evidence, including expert testimony from a professional engineer, Albert J. Magnotta, III. He is Keystone's project manager. R.R. at 442a. Magnotta calculated the distances of Individual Objectors' homes from the Phase III expansion area as follows: May Property – 3,110 feet; Mizanty Property – 3,257 feet; and, Spanish Property – 4,473 feet. See R.R. at 1313a.

In addition, Keystone presented testimony from Benjamin Allen, a licensed professional civil and environmental engineer. Allen testified that Objector May could not see the landfill from his home and that the property he identified was an overburden pile in a mining operation adjacent to the landfill. Id. at 488a. Keystone also presented evidence that the majority of home construction in the Swinick Development occurred during operation of Keystone's landfill. Keystone

7

argued this residential growth, in the neighborhood where Individual Objectors reside, belied the negative impacts they claimed.

Ultimately, the Board decided that Objectors lacked standing to file the appeal. See R.R. at 61a-70a. In its decision, the Board observed: (1) Individual Objectors do not live on or own property abutting the landfill, and they did not establish harm to any pecuniary interest; (2) Individual Objectors' concerns do not rise to the level of a substantial, direct and immediate interest required for standing to challenge the Zoning Officer's determination; (3) aesthetic concerns cannot be equated with a substantial interest; (4) FOL neither owns nor leases any property in the Borough, and it has no financial investments in the Borough; (5) FOL is an organization specifically created to oppose and prevent the Phase III expansion; (6) FOL failed to establish any particular interest different from those of all citizens in obedience to the law; and, (7) because Individual Objectors failed to establish standing, FOL's derivative standing argument also fails.

In addition to determining Objectors lacked standing, the Board affirmed the Zoning Officer's opinion that the Zoning Ordinance did not impose a building height requirement on a landfill which is neither a "building" nor a "structure" subject to the Zoning Ordinance's building height restrictions. See R.R. at 68a-69a. Consequently, the Board denied Objectors' appeal by a 5-0 vote. Id. at 70a.

Objectors appealed to the trial court. They filed a 53-page notice of land use appeal containing 377 paragraphs. Id. at 7a-59a. This included 174 paragraphs of background. Id. at 7a-29a.

Keystone filed a motion to dismiss or strike/quash the appeal. Keystone argued the Board properly determined Objectors lacked standing to maintain the appeal, and Objectors' appeal did not meet the conciseness requirements of the MPC.

The trial court did not take any additional evidence. In April 2017, following oral argument, the trial court issued an opinion and order dismissing Objectors' appeal. The trial court rejected Keystone's argument that Objectors failed to file a concise statement of appeal as required by Section 1003-A(a) of the MPC, 53 P.S. §11003-A(a).[5] The court noted that Objectors' appeal, despite being voluminous, could be distilled.

However, the trial court agreed with the Board that Objectors lacked standing. Tr. Ct., Slip Op., 4/24/17, at 6. In particular, the trial court observed that FOL, as an organization, failed to demonstrate any interest aside from the abstract interest generally shared by the public. Id. To that end, an organization's purpose, by itself, is not enough to confer standing. Id.

In addition, the trial court determined Individual Objectors failed to demonstrate a direct, immediate and substantial interest in the landfill expansion.

---

[5] Added by the Act of December 21, 1988, P.L. 1329.

9

The trial court noted Individual Objectors lived <u>at least a half-mile away from the proposed expansion area</u>, and they were separated from it by a major highway interchange. Notably, the trial court acknowledged that May, Mizanty and Spanish each complained of odors. Tr. Ct., Slip Op., at 7. In addition, May complained of dust and bird droppings. <u>Id.</u>

The trial court then reasoned that this case was factually similar to <u>Armstead v. Zoning Board of Adjustment</u>, 115 A.3d 390 (Pa. Cmwlth. 2015). In <u>Armstead</u>, the trial court determined that both individual residents, and an organization formed to oppose illegal billboards in the City of Philadelphia, lacked standing to challenge the zoning board's grant of a variance to modify an existing sign from vinyl to digital electronic. The nearest objector in <u>Armstead</u> lived a block and a half from the sign. We determined such a distance lacked sufficient proximity to confer standing. Citing <u>Armstead</u>, the trial court here reasoned the Board did not err or abuse its discretion in holding that Objectors lacked standing to appeal the Zoning Officer's preliminary opinion. Therefore, the trial court granted Keystone's motion to dismiss or strike. Objectors appeal.[6]

### III. Issues

Objectors contend that Individual Objectors, who are FOL members, have standing to challenge the Zoning Officer's decision that Keystone's landfill can expand upward by 165 feet, adding 46 years to the life of the landfill, without regard

---

[6] Appellate review of a decision of a zoning hearing board, where the trial court does not take any additional evidence, is limited to determining whether the board abused its discretion or committed an error of law. <u>Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.</u>, 962 A.2d 653 (Pa. 2009). An abuse of discretion occurs where the board's findings are not supported by substantial evidence. <u>Id.</u> Substantial evidence is such relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. <u>Id.</u>

to the height limitations in the Zoning Ordinance. Individual Objectors live in close proximity to Keystone's landfill and can see and smell the landfill from their homes. Also, as a direct result of their proximity to the landfill, they must regularly clean dust and seagull droppings from their homes. Objectors further assert FOL has standing in its own right, and as a representative of Individual Objectors, to challenge the Zoning Officer's preliminary opinion.

For its part, Keystone argues that Objectors' 53-page, 377-paragraph notice of land use appeal should be dismissed for noncompliance with the conciseness requirement in Section 1003-A(a) of the MPC, 53 P.S. §11003-A(a).

## IV. Discussion
### A. Standing
#### 1. Argument
##### a. Individual Objectors

Objectors contend the Board and the trial court erred in determining they lacked standing to appeal the Zoning Officer's opinion. Individual Objectors assert that they live in close proximity to the landfill and that they can see and smell it from their homes. In addition, they are constantly cleaning dust and seagull droppings from their properties. Objectors claim these distinct harms provide them with a substantial, direct and immediate interest in the Zoning Officer's preliminary opinion. The planned expansion will add 165 feet to the height of the landfill and 46 years to the life of the landfill and will significantly increase and prolong these negative impacts.

11

Objectors argue standing is a question of law subject to this Court's *de novo* review. Fumo v. City of Phila., 972 A.2d 487 (Pa. 2009). To enjoy standing, a person or party must show aggrievement by establishing a substantial, direct and immediate interest in the outcome of the litigation. Robinson Twp., Wash. Cty. v. Commonwealth (Robinson II), 83 A.3d 901 (Pa. 2013). In order to be aggrieved, a person or party must have a direct interest that is adversely affected by the challenged action. D.E. Street, Inc. v. Zoning Hearing Bd. of Borough of W. York, 519 A.2d 1093 (Pa. Cmwlth. 1987). An objector could have, by reason of proximity in location, sufficient interest to intervene in zoning litigation. Active Amusement, Inc. v. Zoning Bd. of Adjustment, 479 A.2d 697 (Pa. Cmwlth. 1984).

A substantial interest is one in which there is some discernable adverse effect to some interest other than an abstract interest that all citizens have. Laughman v. Zoning Hearing Bd. of Newberry Twp., 964 A.2d 19 (Pa. Cmwlth. 2009). A direct interest requires a showing that the matter complained of causes harm to the party's interest, although not necessarily a pecuniary interest. Id. An immediate interest requires that the interest be something more than a remote consequence. Rather, it centers on a causal nexus between the action complained of and the injury to the party challenging it. Id. In short, to meet these three requirements, a party must demonstrate that the challenged action personally harms his interest in a way that is greater than that of another citizen. Armstead.

The type of land use, Objectors further assert, relates to how the impacts from the use emanate off the property and affect other landowners' use and enjoyment of their property. For example, in Grant v. Zoning Hearing Board of

12

Township of Penn, 776 A.2d 356 (Pa. Cmwlth. 2001), this Court determined that intervening property owners who lived approximately 6,600 feet from a proposed natural gas-powered electric generating facility, had a direct, immediate, pecuniary and substantial interest in a zoning hearing board proceeding. To that end, we noted the intervenors would be affected by the wind and sound emanating from the proposed facility.

Additionally, in Robinson Township, Washington County v. Commonwealth (Robinson I), 52 A.3d 463 (Pa. Cmwlth. 2012), aff'd in part and rev'd in part, 83 A.3d 901 (Pa. 2013), we determined that elected officials who were also township landowners and residents had standing to challenge a state statute allowing oil and gas operations in all zoning districts. Applying Robinson I here, Objectors argue that denying their right to challenge the Zoning Officer's opinion denied them the ability to protect their property rights in response to a proposed landfill expansion that would negatively impact the use and enjoyment of their land for decades to come.

In sum, Objectors assert Individual Objectors have standing. The May, Mizanty and Spanish families all live in close proximity to the landfill and suffer distinct impacts from landfill operations. They testified they can smell odors of rotting garbage from their properties. Objector May also complained of bird droppings and dust. All three also reported seeing trash trucks regularly driving through their neighborhood on the way to the landfill. These combined harms adversely affect the use and enjoyment of their properties. The proposed expansion would extend these adverse effects for decades.

13

## b. FOL

Objectors further argue FOL has derivative standing as a representative of its members. Individual Objectors are FOL members. Citing Robinson II, Objectors assert that FOL, as an organization, has derivate standing as a representative of its members to bring a cause of action despite the absence of an injury to the organization. To have derivative standing, an organization must establish that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. Pa. Med. Soc'y v. Dep't of Pub. Welfare, 39 A.3d 267 (Pa. 2012).

Objectors also cite Society Hill Civic Association v. Philadelphia Board of License and Inspection Review, 905 A.2d 579 (Pa. Cmwlth. 2006) and Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of City of Pittsburgh, 604 A.2d 298 (Pa. Cmwlth. 1992), in support of their position that FOL has its own standing to appeal. In Society Hill, we determined that a neighborhood organization whose members directly negotiated with the owner and developer of a modern high-rise tower to preserve the facades of historic structures located on the development site, had standing to appeal zoning approval of a plan to replace the marble exterior cornices with fiberglass cornices. In Pittsburgh Trust, this Court determined that a property owners' association representing approximately 60 owners and tenants in the Penn-Liberty cultural district had standing to challenge the zoning action on behalf its members who were suffering immediate or imminent injury because of the disputed action.

Here, Objectors assert FOL engages in extensive public education and advocacy efforts on behalf of its members in opposition to the proposed Phase III expansion. In addition to its involvement in the DEP proceedings, FOL participated in the negotiation of the Host Municipality Fee Agreement, which referenced the zoning issues discussed by the Zoning Officer in his opinion. For these reasons, Objectors assert FOL has standing, in its own right, to appeal.

### c. DEP Permit Proceedings

In their reply brief, Objectors cite an Environmental Hearing Board (EHB) decision finding FOL had standing to challenge Keystone's solid waste management permit renewal. The EHB found that odors from the landfill negatively impact persons living near the landfill, including Individual Objectors May, Mizanty and Spanish. See Friends of Lackawanna v. Dep't of Envtl. Prot. (EHB, No. 2015-063-L, filed Nov. 8, 2017). In Finding of Fact (F.F.) No. 133, the EHB found that DEP received hundreds of odor complaints from people who live near the landfill. However, DEP never found Keystone in violation for the odors. F.F. No. 135. DEP also tested three areas for high levels of methane; although methane itself is odorless, these areas were potential sources of odors. F.F. No. 136. No violations were noted. Id.

The EHB also found that birds inevitably congregate at the landfill. F.F. No. 179. The presence of an unnatural congregation of birds at or near the landfill is a nuisance to local citizens, including Individual Objectors, which cannot be eliminated. F.F. No. 180. Keystone is required by its Nuisance Minimization and Control Plan to reduce the tendency of the landfill to attract birds. F.F. No. 181.

15

Pursuant to a contract with Keystone, the U.S. Department of Agriculture manages the bird population at the landfill. F.F. No. 182. The EHB ultimately determined that Keystone effectively manages the bird population. F.F. No. 183.

The EHB also found that FOL had standing to appeal the renewal of Keystone's DEP permit on the ground that Individual Objectors May, Mizanty and Spanish are adversely affected by the noxious odors that regularly emanate from the landfill. See EHB, Slip Op., at 25-33. The EHB reasoned that Individual Objectors' interest is substantial, direct and immediate because their daily lives are adversely affected by the noxious odors; this interest surpasses the general interest of all citizens in Keystone's compliance with the law. Id. at 30.

Nevertheless, we recognize that the EHB proceeding, which involved standing under state environmental laws, is a separate proceeding that does not appear in the record. Therefore, we will not comment on it further.

## 2. Analysis
### a. Individual Objectors' Standing

As noted above, the Board determined Individual Objectors lacked standing to appeal the Zoning Officer's opinion. The Board reasoned that Objectors' concerns did not rise to the level of a direct, immediate and substantial interest. Bd. Op., 9/28/15, at 5; R.R. at 66a. Citing our decision in Miller v. Upper Allen Township Zoning Hearing Board, 535 A.2d 1195 (Pa. Cmwlth. 1987), the Board reasoned that Objectors' aesthetic concerns related to negative impacts of the landfill

16

and its proposed expansion could not be equated with a substantial interest in the zoning approval of the proposed expansion.

We respectfully disagree. Individual Objectors all testified they own residential property within approximately a quarter-mile to a half-mile from the landfill. Notably, the Board and the trial court acknowledged Individual Objectors' complaints regarding pungent odors of rotting garbage, dust, bird droppings, and truck traffic directly affecting their properties. These discernible effects on Individual Objectors' use and enjoyment of their properties cannot be considered merely aesthetic concerns similar to those of objectors in cases such as Armstead or Spahn v. Zoning Board of Adjustment, 977 A.2d 1132 (Pa. 2009), regarding objections to proposed electronic or illuminated billboards.

In short, the odors, dust, bird droppings and truck traffic all emanate from the very large landfill use. Rather than constituting mere nuisances or annoyances, these harms have discernable adverse effects on Individual Objectors and their families raising legitimate concerns about air quality and health. These harms are directly related to the landfill use and exceed the concerns of the general public. As such, Individual Objectors have a substantial, direct and immediate interest in the Zoning Officer's opinion approving the landfill's proposed expansion, which would extend the operation of the landfill for another 46 years. See In re Broad Mountain Dev. Co., LLC., 17 A.3d 434 (Pa. Cmwlth. 2011) (objectors, who lived within a half-mile of a proposed windfarm consisting of 27 wind turbines, presented sufficient evidence to establish standing to appeal zoning officer's issuance of a permit for the project; because of their close proximity to the wind

17

turbines, objectors would experience constant noise and potential dangers from ice throwing and shedding in freezing conditions); Grant (in addition to their procedural participation in the proceedings before the zoning hearing board, intervening property owners living within 6,600 feet of a proposed electric generating facility, who would be subject to wind and noise from the plant, had standing to challenge the grant of a special exception for the generating facility).

Further, we reject the assertions by Keystone and the Board, that Broad Mountain and Grant are distinguishable. They argue the present case differs from Broad Mountain and Grant because Keystone's landfill use predated Objectors' purchases of their properties. Here, however, Objectors challenge the proposed Phase III expansion. The proposed expansion would, at the least, continue, if not exacerbate, the present harm to Individual Objectors and their properties for another 46 years. As such, Individual Objectors could suffer considerable harm by approval of the expansion.

Keystone and the Board also attempt to distinguish Grant on the basis that it involved procedural rather than substantive standing. In Grant, we determined that the intervening property owners, despite not filing a formal entry of appearance, established procedural standing by participating in the board hearing. However, we also recognized that the intervenors had a "direct, immediate, pecuniary and substantial interest" in the zoning matter because their properties, located with 6,600 feet of the proposed plant, would be subject to wind and sound from the plant. See Grant, 776 A.2d at 359. Thus, the intervenors in Grant, like Individual Objectors

18

here, had standing based on clearly discernable harm directly related to the zoning proceeding.

### b. FOL's Standing

Having determined that Individual Objectors, who are FOL members, established standing, we also hold that FOL has derivative standing on behalf of its members. In <u>Robinson II</u>, the Pennsylvania Supreme Court explained:

> Under Pennsylvania law, an association has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threated injury as a result of the action challenged.

<u>Robinson II</u>, 83 A.3d at 922 (citing <u>Pa. Med. Soc'y</u>). Because FOL has standing as a representative of its members, we need not determine whether FOL also has standing, in its own right, to appeal the Zoning Officer's preliminary opinion.

### B. Notice of Appeal

### 1. Argument

Keystone argues that Objectors' 53-page, 377-paragraph notice of land use appeal should be dismissed for noncompliance with Section 1003-A(a) of the MPC, which provides that land use appeals should include an appeal notice "which <u>concisely</u> sets forth the ground on which the appellant relies." 53 P.S. §11003-A(a) (emphasis added). Keystone asserts Objectors' excessive notice of appeal deliberately violates Section 1003-A(a) and therefore should be dismissed. As

support for its position, Keystone cites Tucker v. R.M. Tours, 939 A.2d 343 (Pa. Super. 2007), where the Superior Court held that the appellants waived their issues on appeal by filing a Pa. R.A.P. 1925(b) concise statement of the errors complained of on appeal, which consisted of 16 pages with 76 paragraphs, plus exhibits. The Court noted that the appellants' voluminous number of lengthy issues created confusion for the trial court. Such conduct, the Superior Court reasoned, breached the appellants' duty of good faith and fair dealing, and thus constituted misconduct designed to undermine the Rules of Appellate Procedure.

In response, Objectors assert their notice of appeal includes a "Grounds for Appeal," a section which clearly and concisely sets forth the 10 grounds on which their appeal is based. See R.R. at 29a-30a. Objectors argue there is nothing in the MPC which prohibits an appellant from providing factual detail in support of its grounds for appeal. To that end, Objectors claim there are no cases holding that a land use appeal ran afoul of Section 1003-A(a) by being too detailed.

Objectors further argue that the Rules of Appellate Procedure do not govern practice in common pleas courts. Therefore, Tucker is inapplicable.

Further, Pennsylvania is a fact-pleading jurisdiction. Sevin v. Kelshaw, 611 A.2d 1232 (Pa. Super. 1992). The purpose of fact pleading is to give a defendant not only notice of a claim, but the factual basis upon which it rests. Id. Like a pleading, Objectors assert, a notice of land use appeal initiates a proceeding in a common pleas court. Its purpose is to define the issues and provide the appellee with notice of the grounds on which the appellant's claims rest.

## 2. Analysis

We agree with the trial court that although Objectors' notice of land use appeal is voluminous, it is distillable. Tr. Ct., Slip Op., at 4. The trial court observed that "although there is precedent for dismissing an insufficient or vague notice of appeal, there has been no authority presented supporting a dismissal of a zoning appeal for too detailed a notice." Id. Therefore, the trial court declined to dismiss Objectors' appeal on such grounds. Id. Given the comprehensive effort by Objectors in the proceedings before the Board, we detect no bad faith or misconduct by Objectors in presenting their detailed notice of appeal to the trial court.

## V. Conclusion

Having determined the Board erred in holding that Objectors lacked standing to appeal the Zoning Officer's preliminary opinion, we reverse the order of the trial court granting Keystone's motion to dismiss or strike Objectors appeal. Consequently, we remand this case to the trial court for a decision on the merits of Objectors' appeal.

ROBERT SIMPSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends of Lackawanna;      :
Joseph James and Mari May;      :
Edward and Beverly Mizanty;      :
and Katherine Spanish and Todd      :
Spanish,      :
              Appellants      :
     :
          v.      :    No. 656 C.D. 2017
     :
Dunmore Borough Zoning Hearing      :
Board and Dunmore Borough;      :
Keystone Sanitary Landfill, Inc.;      :
F&L Realty Corporation; F&L      :
Realty, Inc.; Keystone Company      :
and Keystone Landfill, Inc.      :

# **O R D E R**

**AND NOW**, this 7th day of May, 2018, the order of the Court of Common Pleas of Lackawanna County is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

 

 

                          _____
                          ROBERT SIMPSON, Judge