Jane Worthington,                           :
                    Appellant               :
                                            :
          v.                                :
                                            :
Mount Pleasant Township and Kathleen        :
W. Yonker, George H. Yonker, Yonker         :
Family Industries, LLP, Zenith             :
Management, LLC and Range Resources -      :     No. 1149 C.D. 2018
Appalachia, LLC                            :     Argued: May 7, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                                 FILED:  June 6, 2019


          Jane Worthington (Worthington) appeals from the Washington County
Common Pleas Court's (trial court) July 17, 2018 order (docketed July 25, 2018)
dismissing her appeal from the Mount Pleasant Township (Township) Board of
Supervisors' (Board) decision granting Range Resources - Appalachia, LLC's (Range
Resources) conditional use application (Application) for a proposed unconventional
natural gas development well and well pad (Well Site).  Worthington presents two
issues for this Court's review: (1) whether the trial court erred by upholding the
Board's decision denying Worthington party status; and (2) whether the Board's
denial violated Worthington's due process rights, thereby rendering the Board's
decision *void ab initio*.

          On April 18, 2016, Range Resources submitted the Application to the
Board for approval of the Well Site and accessory access on two tracts of land located
along Baker Road in the Township's Rural Residential (R-1) Zoning District, which
"is now or formerly owned by Kathleen W. Yonker, George H. Yonker, Yonker

Family Industries, LLP, and Zenith Management, LLC (collectively, the Yonkers)."[1] Yonker Br. at 2 n.1. Range Resources proposed to commence work by upgrading Baker Road in October/November 2016. *See* Reproduced Record (R.R.) at 43a. After the Township's Planning Commission reviewed and approved the Application, the Board conducted a public hearing on August 22, 2016.[2]

As the Board hearing commenced, the Township's solicitor (Solicitor) explained conditional use standards, and notified the attendees that they could seek standing to be a party, as follows:

> Legal standing is a term under common law and under the [Pennsylvania Municipalities Planning Code (MPC)[3]] that requires that in order to be a technical party with full rights of cross-examination of witnesses and whatnot [sic], and the right to appeal adversely [sic] to the [trial court] from an adverse decision, that you must prove that you are affected

---

[1] Section 200-22.B(c) of the Township's Zoning Ordinance (Ordinance) expressly authorizes oil and gas wells as conditional uses in the Township's R-1 Zoning District. *See* Ordinance § 200-22.B(c), Reproduced Record (R.R.) at 427a, 489a-492a.

> [T]he existence of a conditional use provision in a zoning ordinance indicates legislative acceptance that the use is consistent with the zoning plan and a use application should only be denied where the adverse impact on the public interest exceeds that which might be expected in normal circumstances. An applicant for a conditional use has the initial burden of proving compliance with the specific criteria set forth in a zoning ordinance. Once the applicant shows compliance with the ordinance, the conditional use application must be granted unless objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety and welfare.

*In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009) (citations omitted). "A permitted use must be afforded the broadest interpretation so that a landowner may have the benefit of the least restrictive use and enjoyment of his land." *Allegheny Valley Sch. v. Zoning Hearing Bd. of Slippery Rock Borough*, 517 A.2d 1385, 1387 (Pa. Cmwlth. 1986).

[2] Also on August 22, 2016, the trial court preliminarily enjoined the Board from issuing its decision on the Application, but dissolved the injunction on August 29, 2016. *See* R.R. at 592a-601a. In addition, simultaneously with this action, the Township's zoning hearing board was considering Citizens for Pennsylvania's Future's validity challenge to the Township's Zoning Ordinance, which was denied on March 27, 2017. *See* R.R. at 603a-638a.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

by the application in the sense that you have -- that you are arguably adversely, directly, immediately and substantively affected by potentially aggrieved [sic] by the decision in ways different from the general populous.

One way to show that is if you live in close proximity to the subject property and, in addition to that, can show adverse impact because of that proximity, you may have standing and, therefore, the ability to fully participate in the sense of being able to cross-examination and whatnot [sic] in the proceedings.

Again, if you don't wish to assert that or you don't have that standing and you're a resident, we're certainly still going to allow you to direct comments to the Board, which then in turn may be formulated into questions or otherwise taken into consideration.

Does anybody wish to assert themselves as a party having standing in the matter?

R.R. at 79a.

The Board afforded Worthington the opportunity to state why she should be granted legal standing in the action. Worthington represented that she resides at 405 Fourth Street in McDonald, which she admitted is more than three miles from the Well Site.[4]  *See* R.R. at 80a-81a.  However, Worthington declared that she was

---

[4] "An objector who is located in close proximity to the land involved in a zoning application normally has standing to contest the application." *In re Broad Mountain Dev. Co., LLC*, 17 A.3d 434, 440 (Pa. Cmwlth. 2011).  This Court has ruled:

[P]roperty that is adjacent to or abuts the zoning area in question is in close proximity for standing purposes.  We have also held that the owner of [a] property that is within 400 to 600 feet of the challenged zoning district is also within close proximity and has standing.  However, **the owners of property one-half mile and one mile or more away from the challenged zoning area have been deemed to not be in close proximity in order to confer standing** . . . .

*Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19, 22-23 (Pa. Cmwlth. 2009) (citations omitted; emphasis added) (wherein the court held that the objector whose properties were located 8/10, one and two miles from the subject property was not a landowner in close proximity and, thus, lacked standing).

"representing her daughter,[5] who is 12 years old, [and] who is benzene exposed. . . . She's a student at Fort Cherry Elementary School [(School)[6]]. . . . [a]nd we are being advised to keep her away from . . . any activities that would agitate her exposure." R.R. at 80a; *see also* R.R. at 111a. Worthington claimed that the Well Site was proposed to be located less than one mile from the School.[7] *See* R.R. at 81a; *see also* R.R. at 111a.

The Board denied Worthington party status,[8] *see* R.R. at 87a, but nevertheless permitted her to comment later in the hearing regarding her concerns. Worthington stated to the Board that wind could carry benzene from the Well Site to the School and negatively affect her granddaughter's already poor health. *See* R.R. at 111a-112a. Worthington read from literature regarding potential health hazards, declared that she had a baseline and medical records, and asked the Board to move the proposed Well Site another approximate 1,400 extra feet, so it is at least one mile from the School.[9] *See* R.R. at 111a-112a.

On September 28, 2016, the Board approved the Application subject to 60 conditions. *See* R.R. at 10a-33a. Range Resources requested clarification on the

---

[5] According to her brief, Worthington was in fact representing her "granddaughter." Worthington Br. at 14.

[6] The hearing witnesses interchangeably referred to the School as: the School, Fort Cherry School District and the Fort Cherry School. In its decision, the Board referred to it as the "Fort Cherry School District's complex." Board Dec. at 7; R.R. at 43a. According to the record, the Fort Cherry Elementary School and the Fort Cherry Junior/Senior High School are in the same complex.

[7] According to the undisputed record evidence, the distance "[f]rom the nearest well to the [S]chool" is approximately 3,840 feet. R.R. at 85a, 96a. This Court takes judicial notice that there are 5,280 feet in a mile.

[8] Range Resources objected to the standing requests of all individuals who did not live within one-half mile from the Well Site, and to a standing request on the School's behalf, since the School is three-quarters of a mile away and did not participate at the hearing. *See* R.R. at 85a-86a. Range Resources also presented a memorandum of law on standing. *See* R.R. at 85a, 575a-590a.

[9] Range Resources' Civil and Environmental Engineering Manager Karl Matz testified concerning the Well Site's proposed location, stating there are "west by northwest prevailing winds. So, [the Well Site] would be downwind of the [S]chool." R.R. at 96a.

4

conditions on October 10, 2016. Thereafter, the Board issued a modified decision. *See* R.R. at 36a-61a. Therein, the Board made a finding that "numerous members of the public . . . were provided a full and fair opportunity to make public comment regarding the Application . . . , which the Board received and took into consideration in rendering its [d]ecision herein." Board Dec. at 4; R.R. 40a. The Board also found:

> The proposed [Well Site] is located approximately 3,840 feet from Fort Cherry School District's complex; will not be visible from the School property; will not likely produce sounds that are excessive or otherwise readily audible from the School property; and the direction of the prevailing winds are such that the [Well Site] is said to be 'downwind' with prevailing air currents flowing generally from the direction of the School toward the direction of the proposed [Well Site].

Board Dec. at 7; R.R. 43a.

On October 28, 2016, Worthington appealed from the Board's denial of her party status to the trial court. *See* R.R. at 3a. Range Resources and the Yonkers intervened. *See* R.R. at 3a. On February 1, 2018, Worthington requested the trial court to hold a status conference.[10] *See* R.R. at 3a. After a March 1, 2018 status conference, the trial court issued a briefing and argument schedule. The trial court heard argument on May 7, 2018. In the July 17, 2018 order, the trial court affirmed the Board's decision denying Worthington standing. On August 15, 2018, Worthington appealed to this Court.[11]

---

[10] According to Range Resources, during the intervening months between October 28, 2016 and February 1, 2018, "in accordance with the schedule set forth in the Application and consistent with the conditions imposed by the Board, Range [Resources] commenced and completed all required road upgrades, construction, drilling, and hydraulic fracturing of the gas wells. These wells are in production." Range Resources Br. at 10. The record does not disclose the reason Worthington did not move this matter forward.

[11] Where, as here, the trial court did not take additional evidence, this Court's review is limited to determining whether the board of supervisors committed an error of law or manifest abuse of discretion. The board abuses its discretion if its findings are not supported by

**Standing**

Worthington argues that the trial court erred by upholding the Board's decision denying her party status. Worthington specifically asserts that the trial court confused procedural standing (party to the hearing) with substantive standing (party to the case on appeal), and erred by agreeing with the Board that she was not an aggrieved party.

Initially, "[m]unicipal corporations may do those things that the legislature expressly or by necessary implication has placed within their power to do." *K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors*, 954 A.2d 718, 723 (Pa. Cmwlth. 2008). Section 909.1(b)(3) of the MPC[12] provides that the governing body shall have exclusive jurisdiction to hear and render final adjudications regarding "[a]pplications for conditional use under the express provisions of the zoning ordinance pursuant to [S]ection 603(c)(2) [of the MPC, 53 P.S. § 10603(c)(2) (relating to conditional use ordinance provisions)]." 53 P.S. § 10909.1(b)(3). Accordingly, the Board, as the Township's governing body, has the authority to permit conditional uses according to the standards and criteria set forth in the Township's Zoning Ordinance (Ordinance) enacted by the Board to regulate Township land use. *See* Ordinance § 200-77, R.R. at 456a-458a.

Regarding conditional use approval procedures, Section 200-77.A(4) of the Ordinance directs that the Board shall conduct hearings, at which objectors may appear and "present[] . . . their opposition to the application[.]" Ordinance § 200-77.A(4), R.R. at 457a. Both Section 913.2(b)(3) of the MPC (relating to conditional

---

substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1215 n.3 (Pa. Cmwlth. 2011) (citations omitted).

[12] Section 909.1 of the MPC was added by Section 87 of the Act of December 21, 1988, P.L. 1329.

use hearings) and Section 200-77.A(6) of the Ordinance state: "Nothing in this subsection shall prejudice the right of any **party** opposing the application to appeal the decision to a court of competent jurisdiction."[13]   53 P.S. § 10913.2(b)(3)[14] (emphasis added); Ordinance § 200-77.A(6), R.R. at 457a (emphasis added). Nonparties are not expressly afforded similar rights.

**The MPC and the Ordinance are silent as to who is a party in conditional use cases.**[15]   However, the law is well established that appeals from

---

[13] Because this party appeal language is contained only within the conditional use deemed approval provision of the Ordinance, it arguably applies only where there has been a deemed approval. *See* Ordinance § 200-77.A(6), R.R. at 457a.

[14] Added by Section 93 of the Act of December 21, 1988, P.L. 1329.

[15] All of the parties and the trial court cite to Section 908(3) of the MPC as the statutory provision governing party status in this appeal. *See* Worthington Br. at 5, 8, 10-11; Range Resources Br. at 14-15; Yonker Br. at 10-11; Township Br. at 1 (joining Yonker Brief); Trial Ct. Op. at 2. However, Section 908(3) of the MPC states:

> **The board** shall conduct hearings and make decisions in accordance with the following requirements:
>
> . . . .
>
> The parties to the hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. The board shall have [the] power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose.

53 P.S. § 10908(3) (emphasis added). "Where a statute or ordinance defines a word or phrase therein the court is bound thereby although such definitions may be different from ordinary usage." *Appeal of Neshaminy Auto Villa Ltd.*, 358 A.2d 433, 435 (Pa. Cmwlth. 1976). Section 901 of the MPC declares that "the term 'board' [as used in Section 908 of the MPC] shall refer to [the municipality's] zoning hearing board." 53 P.S. § 10901 (emphasis omitted).

The instant Application is for a conditional use. The MPC prescribes that boards of supervisors decide conditional use applications, *see* 53 P.S. § 10909.1(b)(3), while zoning hearing boards decide special exception applications. *See* Section 909.1(a)(6) of the MPC, 53 P.S. § 10909.1(a)(6). Despite that this Court has generally held that "[a] conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board[,]" *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006); *see also EQT Prod. Co. v. Borough of Jefferson Hills*, 162 A.2d 554 (Pa. Cmwlth. 2017); *Williams Holding*

governing bodies' decisions rendered in their adjudicatory (rather than legislative) capacities are taken to trial courts pursuant to the Local Agency Law.[16]  *See Giant Food Stores, LLC v. Penn Twp.*, 167 A.3d 252 (Pa. Cmwlth. 2017) (township's denial of an intramunicipal liquor license transfer); *see also Money v. Bd. of Supervisors of the Twp. of Westtown*, 89 A.3d 308 (Pa. Cmwlth. 2014) (board of supervisors' approval of sign landscape and maintenance agreement); *Butler v. Indian Lake Borough*, 14 A.3d 185, 188 (Pa. Cmwlth. 2011) (borough council's grant of commercial boat dock easement); *Consumer Inv. Fund v. Supervisors of Smithfield Twp.*, 532 A.2d 543 (Pa. Cmwlth. 1987) (board of supervisors' denial of a holding tank permit).

Relative to standing, Section 752 of the Local Agency Law provides that "[a]ny *person aggrieved* by an adjudication of a local agency who has a *direct interest* in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals . . . ."  2 Pa.C.S. § 752 (emphasis added). However, this Court has held that more than just a direct interest is necessary.[17]  In

---

*Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202 (Pa. Cmwlth. 2014); *Bailey v. Upper Southampton Twp.*, 690 A.2d 1324 (Pa. Cmwlth. 1997), based upon the MPC's definition of "board," Section 908(3) of the MPC expressly applies only to zoning hearing boards.

Moreover, although case law has applied some other subsections of Section 908 of the MPC to conditional use applications, this Court found no case law wherein Section 908(3) of the MPC was held to govern conditional use applications.  Accordingly, Section 908(3) of the MPC is not the statutory provision governing this conditional use application appeal.

[16] 2 Pa.C.S. §§ 551-555, 751-754.  The Board is a local agency.  Section 101 of the Local Agency Law defines "local agency" as "[a] government agency other than a Commonwealth agency."  2 Pa.C.S. § 101.  "Government agency" is defined, in pertinent part, as "any political subdivision or municipal or other local authority[.]"  *Id.*; *see also Miravich v. Twp. of Exeter*, 6 A.3d 1076 (Pa. Cmwlth. 2010).

[17] This Court acknowledges that *East Rockhill Township* differs from this instant matter in that it involved a *board's* right to appeal from the deemed approval of a conditional use.  It is nevertheless persuasive here, particularly since there is no other case law in which this Court applied Section 908(3) of the MPC to a conditional use hearing to determine who the General Assembly intended were parties thereto.

*Whitehall Manor, Inc. v. Planning Commission of the City of Allentown*, 79 A.3d 720 (Pa. Cmwlth. 2013), this Court summarized:

> Neither the MPC nor the [city's subdivision and land development ordinance (SALDO)] define the term 'person aggrieved.' However, our Supreme Court explain[ed]:
>
> > 'Aggrieved person' has acquired a particular meaning in the law. In *William Penn* [*Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975)], we explained that the core concept of standing was that a party had to be 'aggrieved.' [*Id.* at] 280-81. And, 'aggrieved' when used in terms of standing is generally understood to mean that the person 'has a substantial, direct and immediate interest in the claim sought to be litigated' as set forth in *William Penn. See, e.g., Hosp*[.] *& Health System Ass'n of Penn. v. Dep't of Pub*[.] *Welfare, . . . 888 A.2d 601 (Pa. 2005)* (explaining that under *William Penn* 'where a person is not adversely affected in any way by the matter challenged, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge.'); *Bergdoll v. Kane, . . . 731 A.2d 1261, 1269 ([Pa.] 1999); see also Sparacino v. Phila*[.] *Zoning Bd. of Adjustment, 728 A.2d 445, 448 (Pa. Cmwlth. 1999)* (explaining that [**Section 752 of the Local Agency Law**,] 2 Pa.C.S. § 752, **which provides that 'any person aggrieved' by an adjudication of a local agency, means that the person must establish standing under** *William Penn*). . . .
>
> *Spahn v. Zoning Bd. of Adjustment, . . . 977 A.2d 1132, 1149-50 ([Pa.] 2009).*

*Whitehall Manor*, 79 A.3d at 725-26 (footnotes omitted) (emphasis added). Accordingly, all three *William Penn* standing requirements apply here, which the parties do not dispute, and Worthington must show that she has a substantial, direct and immediate interest in the Board's decision on the Application.

9

Moreover, this Court has ruled that, to be a party to a zoning hearing, one must have procedural standing (*e.g.*, asserted her right to participate sufficiently early) *and* substantive standing (*e.g.*, "sufficient interest in the outcome of the litigation to be allowed to participate. . . . – . . . an interest that is direct, immediate and substantial[.]"). *Miravich*, 6 A.3d 1076, 1078 (Pa. Cmwlth. 2010). Substantive standing "is required at all levels of proceedings[.]" *Id.*

In response to Solicitor's invitation to give standing testimony, Worthington acknowledged that she lives more than three miles from the Well Site, but stated:

> [] WORTHINGTON: Yes. I'm representing my [grand]daughter, who is 12 years old, who is benzene exposed.
>
> SOLICITOR []: Anything else?
>
> [] WORTHINGTON: No. She's a student at Fort Cherry Elementary and she'll be entering high school this year. We've sent medical evidence to the [Board]. We've sent it through email and we've sent it personally -
>
> SOLICITOR []: I don't want to take substantive testimony.
>
> [] WORTHINGTON: Okay.
>
> SOLICITOR []: Okay. Thank you.
>
> [] WORTHINGTON: But we have established a medical case with several doctors. And we are being advised to keep her away from these types of activities -
>
> SOLICITOR []: Again –
>
> [] WORTHINGTON: Okay.
>
> SOLICITOR []: I'm sorry, could you – I'm sorry, I cut you off in that sentence.
>
> [] WORTHINGTON: Okay.
>
> SOLICITOR []: You were advised what?

10

[] WORTHINGTON: To keep her away from any activities that would agitate her exposure.

SOLICITOR []: Thank you. Do you have anything else, ma'am?

[] WORTHINGTON: No.

R.R. at 80a-82a.

When the Board denied Worthington and others standing at the hearing, Solicitor announced:

[A]ny of the folks that the Board has ruled do not have technical party standing, you are going to have an opportunity to make comment, as other residents in the community will. You don't have the right to engage in cross-examination of the witnesses directly. However, you can direct your comments to the [Board] Chair[man] in a fashion that may lead to [the Board] taking those into consideration and/or reformulating them into questions or leading [Range Resources] on [its] own accord to comment in response to those.

R.R. at 87a.

Worthington offered the following comment on the Application:

[] WORTHINGTON: . . . I don't believe that we are fear [] mongers. I don't believe that children do not get sick. . . . But I do believe in responsible energy development. . . . But I would like you to go home tonight and truly become responsible. I would like you to look up some of the things that do happen near and on well sites. This is backed up by fact.

I'm going to quote from a paper from the physicians, scientists and engineers, which I believe that all of the [Board members] got a copy of this at some point. It came in your emails and it came in your boxes. I'm going to quote what these physicians and engineers have said. This is not for your fear. This is for your education.

. . . I'm asking for a condition . . . , allowing this pad to be developed, but one mile away from the [S]chool. I'm asking for approximately 1,400 extra feet. I don't know

11

where that would land it. But it would land it a mile away from my [granddaughter].

. . . .

I'm asking as a condition to move this back a mile. Even though there are no evidences on what a significant safe distance is, a mile has become the kind of yardstick for it.[18] Everybody in Pennsylvania is talking about the mile for a smile. Move it back a mile and maybe the mom[]s will smile.

. . . .

And now we have air monitoring that is coming to the [S]chool. The school district, to clear the air, has sent a letter, and I would like to know, have you received it, that the school board does not approve of this [Well Site]? Have you not received that letter as a [sic] Township?

[BOARD] CHAIRMAN []: We've received it.[19]

[] WORTHINGTON: You have?

---

[18] In her brief to this Court, Worthington cited to *Grant v. Zoning Hearing Board of the Township of Penn*, 776 A.2d 356 (Pa. Cmwlth. 2001) and to then-President Judge Pellegrini's concurring opinion in *Armstead v. Zoning Board of Adjustment of the City of Philadelphia*, 115 A.3d 390 (Pa. Cmwlth. 2015), to support her claim that the School's proximity within one mile of the Well Site gives her standing. In *Armstead*, then-President Judge Pellegrini stated:

> [W]here the use has been intensive and its effect emanates off the property, we have held that property owners who live well over a mile away have standing. *Grant* . . . (holding, in part, that landowners had standing by virtue of living within 6,600 feet of proposed electric generation facility).

*Id.* at 403. The *Grant* Court ruled: "[The petitioners] are [] aggrieved in that they have a direct, immediate, pecuniary and substantial interest in this matter because their property is 6[,]600 feet from the proposed site and wind and sound from the proposed site flow to their land." *Id.* at 359. Thus, there appears to have been evidence which the zoning hearing board admitted in *Grant* that wind and sound would flow to the Grants' land. No such evidence was presented in the instant case. Moreover, unlike in the case now before this Court, no one timely objected to the Grants' standing. A party's failure to object to one's standing waives the issue on appeal. *Thompson v. Zoning Hearing Bd. of Horsham Twp.*, 963 A.2d 622 (Pa. Cmwlth. 2009). For these reasons, *Grant* and *Armstead* are distinguishable from the case at bar.

[19] The basis for the School's purported objection to the Well Site (*i.e.*, specifically, whether it included student health concerns) is not evident on this record.

12

> As people here in this room believe that the [S]chool is not behind this, the school board has sent a letter. They've said that they don't approve of the site. Nobody feels secure with this when it comes to a vulnerable population such as children.
>
> . . . .
>
> I want this [W]ell [S]ite moved back to one mile because I'm truly the one person in the room that is looking for responsible development.

R.R. at 111a-112a.


**Substantial Interest**

"A substantial interest is one in which there is some discernable adverse effect to some interest other than an abstract interest that all citizens have." *Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525, 532 (Pa. Cmwlth. 2018). Here, Worthington's standing claim is based on her having custody of her granddaughter and the School's close proximity to the Well Site. In her brief to this Court, Worthington specified that she is her granddaughter's "custodian and sole caretaker." Worthington Br. at 14. However, there is no record evidence of her granddaughter's legal custodial status or proof of her full-time residence with Worthington.[20] For the first time in her brief to this Court, Worthington implies that she is acting *in loco parentis* for her granddaughter, such that their relationship is essentially parent and child. *See* Worthington Br. at 14 n.2. The record before the Board and this Court contain nothing more than Worthington's representations, and grandparent standing is not automatic. *See M.W. v. S.T.*, 196 A.3d 1065 (Pa. Super. 2018) (grandmother lacked standing to pursue custody action); *D.G. v. D.B.*, 91 A.3d 706 (Pa. Super. 2014) (grandmother lacked *in loco parentis* standing in custody action); *In re L.C., II*, 900 A.2d 378 (Pa. Super. 2006) (grandmother lacked standing

---

[20] Worthington did, however, produce evidence that she has legal custody of her grandson.

13

to participate in dependency proceeding). Because there is no record proof that Worthington is her granddaughter's legal guardian, or is otherwise responsible for her well-being, she failed to show "some discernable adverse effect to some interest other than an abstract interest that all citizens have."[21] *Friends of Lackawanna*, 186 A.3d at 532. Accordingly, this Court holds that Worthington failed to satisfy the substantial interest requirement for standing.

**Direct Interest**

This Court has held that

> [a] person has a direct interest in the adjudication of a governmental agency if the person is able to show that the adjudication causes harm to an interest of the person, *i.e.*, that the claimed harm to the interest can be said to have resulted in some concretely demonstrable way from the adjudication.

*Butler*, 14 A.3d at 188 (italics emphasis added).

Here, Worthington asserts that her interest is direct because the Well Site, which is less than a mile from the School her granddaughter attends, will emit benzene, "the very same chemical that has made her granddaughter severely ill and *can* worsen her symptoms." Worthington Br. at 15 (emphasis added).

However, because an oil and gas well is a permitted conditional use in the Township, the Board has already legislatively determined that it "is consistent with the zoning plan and a use application should only be denied where the adverse impact on the public interest exceeds that which might be expected in normal circumstances." *In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009). Further, the Board took Worthington's public comments into consideration in rendering its

---

[21] Whether the School, or parents of students who attend the School, would have a greater interest than the general citizenry to object based on student health concerns is not before the Court and is a question left for another case.

14

decision. *See* R.R. at 40a. Finally, the Board's conditions included requirements that the Well Site's operations shall at all times comply with applicable federal and state laws and regulations and that, as provided in Range Resources' Application submissions, Range Resources will "take all necessary precautions . . . to monitor, control, and minimize to the extent possible[,] emissions into the air and environment caused by, during or as a result of any drilling, fracturing, completion, and production operations[.]" *See* R.R. at 20a.

Worthington's statements that benzene emissions from the Well Site *could* reach her granddaughter at the School and *possibly* worsen her condition, and she "do[es]n't want to *take that chance*[,]" R.R. at 112a (emphasis added), do not "show that the adjudication *causes* harm to [her] interest [(*i.e.*, a causal connection between the two).]" *Butler*, 14 A.3d at 188. Accordingly, this Court holds that Worthington did not satisfy the direct interest requirement for standing.

**Immediate Interest**

"An immediate interest requires that the interest be something more than a remote consequence." *Friends of Lackawanna*, 186 A.3d at 532. Worthington contends that her interest is immediate and not remote because the Well Site is less than one mile from the School where her granddaughter *could be* further exposed. However, because Worthington's statements that benzene emissions from the Well Site *could* reach her granddaughter at the School and *possibly* worsen her condition, and she "do[es]n't want to take that chance[,]" R.R. at 112a, represent "a remote consequence[,]" *Friends of Lackawanna*, 186 A.3d at 532, this Court holds that Worthington did not satisfy the immediate interest requirement for standing.

Although this Court sympathizes with Worthington's concerns regarding her granddaughter's health, based upon the information Worthington supplied to the Board, those theoretical concerns do not satisfy the legal requirement that she have a

substantial, direct and immediate interest to have standing.[22] Accordingly, the trial court properly affirmed the Board's conclusion that Worthington is not a party to this litigation.

Based on the foregoing, this Court affirms the trial court's order.


_____
ANNE E. COVEY, Judge

---

[22] In light of this Court's conclusion that the Board properly determined that Worthington did not have standing, we need not address whether the Board's decision was *void ab initio*. "[T]he *void ab initio* doctrine applies where a township fails to comply with statutory procedural requirements." *Glen-Gery Corp. v. Zoning Hearing Bd. of Dover Twp.*, 907 A.2d 1033, 1043 (Pa. 2006).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jane Worthington,       :
     Appellant   :
           :
    v.      :
           :
Mount Pleasant Township and Kathleen :
W. Yonker, George H. Yonker, Yonker :
Family Industries, LLP, Zenith   :
Management, LLC and Range Resources - :  No. 1149 C.D. 2018
Appalachia, LLC      :

## O R D E R

AND NOW, this 6th day of June, 2019, the Washington County Common Pleas Court's July 17, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge