Raymond K. GRANT and Patricia
S. Grant, husband and wife,
and Betty T. Grant,

v.

ZONING HEARING BOARD OF THE
TOWNSHIP OF PENN,

v.

West Penn Power Company and Allegheny Energy Units 6 and 7, LLC, Thomas B. Transue and Lora L. Transue, husband and wife, David D. Burkardt and Catherine Burkardt, husband and wife, Robert Mastrogiacomo and Dawn L. Mastrogiacomo, husband and wife.

Appeal of West Penn Power Company
and Allegheny Energy Units 6
and 7, LLC.

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.

Decided June 21, 2001.

Bernard P. Matthews, Jr., Greensburg, for appellants.

Andrea Geraghty, Pittsburgh, for appellees.

Before DOYLE, President Judge, KELLEY, Judge, FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Appellants, West Penn Power Company (West Penn) and Allegheny Energy Units 6 & 7 LLC (Allegheny) appeal from an order of the Court of Common Pleas of Westmoreland County (trial court) which overruled the decision of the Penn Township Zoning Hearing Board (Board) granting special exception approval to Allegheny to erect an electric generating facility on property zoned A 1 Agricultural.

On January 18, 2000 Allegheny filed an application for a special exception with the Board to construct an electric generating facility on land owned by West Penn. The unmanned facility would generate power during periods of peak demand and require the installation of two, forty-four megawatt natural gas fired combustion turbine generators, with fuel oil backup capability. A five hundred-gallon tank would be used for the storage of diesel fuel, which would be used to power the plant should natural gas become unavailable. Two sixty-foot exhaust stacks would be constructed in order to allow for escape of waste products from consumed fuel. The proposed facility would generate electricity that would be transferred to an existing electric transmission and distribution substation adjacent to the site and

operated by Allegheny Power, a public utility.

Allegheny applied for the special exception as either a "public utility building" pursuant to Section 190 11.B(21) of the Penn Township Zoning Ordinance (Ordinance) or as a "use not specifically listed" pursuant to Section 190–21.B(44). The Board granted special exception relief, attaching various conditions.

On March 9, 2000, Raymond Grant, Patricia Grant and Betty Grant appealed the Board's decision to the trial court. Appellants filed a petition to quash the appeal for lack of standing. Thereafter, the trial court conducted a de novo hearing to receive evidence so as to determine whether the Grants had standing to pursue the appeal. In an order dated May 23, 2000, the trial court granted the petition to quash with respect to Betty Grant but denied the petition as to Raymond and Patricia Grant.

The trial court also issued an order on June 1, 2000 in response to a petition to intervene filed by Thomas and Lora Transue, David and Catherine Burkardt, Robert and Dawn Mastrogiacomo (Intervenors) and the Conservation Association of the Penn Township Area (Association). The trial court, determining that the individual petitioners lived within one mile of the proposed electric generating facility, granted the petition to intervene as to the individual petitioners but denied the petition to intervene as to the Association.

With respect to the Board's grant of the special exception for the electric generating facility, the trial court issued an order on July 24, 2000 wherein it determined that the electric generating facility did not qualify for such an exception and reversed the decision of the Board.

■ This appeal followed wherein Allegheny raises the following issues: (1) whether the trial court erred in determining that Mr. and Mrs. Grant had standing to appeal; (2) whether the trial court erred in permitting Intervenors to intervene in the appeal and (3) whether the trial court erred in reversing the special exception granted by the Board.[1]

■ Initially, we will address the issue of whether the Grant's had standing to file the appeal to the trial court. The trial court observed that Section 908(3) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10908(3) governs the determination of who is a party before the Board.[2] Here, both Mr. and Mrs. Grant testified at the Board hearing, voiced their objections to the proposed electric generating facility and asked questions. As such, the trial court concluded that Mr. and Mrs. Grant were a party to the Board proceedings and having been a party before the Board they were necessarily aggrieved by the adverse decision of the Board. *Baker v. Zoning Hearing Board of West Goshen Township*, 27 Pa.Cmwlth. 602, 367 A.2d 819 (1976)(individuals who have party status before the board may

---

1. Where, as here, the trial court does not take additional evidence in a zoning proceeding, our review is limited to determining whether the board abused its discretion or committed an error of law. *Rapaport v. Zoning Hearing Board of the City of Allentown*, 687 A.2d 29 (Pa.Cmwlth.1996).

2. Section 908(3) of the MPC, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(3) provides that "[t]he parties to the

hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. The board shall have the power to require all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose."

seek an appeal to the trial court as a party aggrieved.)

■ Allegheny argues that Mr. and Mrs. Grant were not a party before the Board because they did not formally enter an appearance before the Board. However, as the trial court stated, which determination Allegheny does not dispute, the Board does not have an established policy that would allow those in attendance at the hearing to declare their status as parties to the hearing. (Trial court opinion of May 23, 2000 at p. 2.) As stated in *Orie v. Zoning Hearing Board of the Borough of Beaver*, 767 A.2d 623, 624, n. 4. (Pa. Cmwlth.2001), the average person would be unfamiliar with the rule requiring a written appearance. The better practice would be for the board to explain, on the record any steps a citizen must take to preserve his or her appeal rights.

Here, Mr. and Mrs. Grant's actions before the Board were substantive. They testified under oath, voiced objections to the special exception and raised questions, which questions the Board then posed to Appellants. In addition to being parties before the Board and therefore aggrieved by the adverse decision, Mr. and Mrs. Grant are also aggrieved in that they have a direct, immediate, pecuniary and substantial interest in this matter because their property is 6600 feet from the proposed site and wind and sound from the proposed site flow to their land. As such, we agree with the trial court that the Grants, who were parties to the hearing, had standing to appeal the Board's decision.

■ The next issue we address is whether the trial court erred in granting Intervenors' petition to intervene. There is no dispute that the Intervenors did not attend or speak at the Board hearing. Intervenors sought permission to intervene in this case pursuant to Pa. R.C.P. No. 2327(4) which provides that:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if:

. . .

(4) The determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgement in the action.

Here, Appellants maintain that Intervenors do not have a "legally enforceable interest" such that intervention was proper. However, the courts have previously stated that owners of property in the immediate vicinity of property involved in zoning litigation have the requisite interest and status to become intervenors under Pa. R.C.P. No. 2327(4). *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A.2d 692 (1960), *Schatz v. Upper Dublin Township Zoning Hearing Board*, 21 Pa. Cmwlth. 112, 343 A.2d 90 (1975). The Intervenors in this case live within one mile of the proposed electric generating facility, and as such have the requisite interest and status to become intervenors under Pa. R.C.P. No. 2327(4).

■ Appellants further argue that because the interests of the Intervenors are adequately represented by Mr. and Mrs. Grant, the trial court should have denied the petition to intervene in accordance with Pa. R.C.P. No. 2329(2) which provides:

Upon the filing of the petition and after hearing, of which *due notice shall be given to all parties*, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if:

. . .

(2) the interest of the petitioner is already adequately represented.

Although Intervenors informed the trial court that they would adopt the arguments presented by Mr. and Mrs. Grant, such does not mandate that intervention be refused. Specifically, Pa. R.C.P. No. 2329(4) provides that the trial court "may" refuse an application for intervention if the intervenors' interests are adequately represented, Pa. R.C.P. No. 2329(4) does not mandate that the application be refused. Moreover, the trial court in this case also determined that the interest of the Intervenors might vary from those of Mr. and Mrs. Grant because the Intervenors live in closer proximity to the proposed electric generating facility. Because Pa. R.C.P. No. 2329(4) is discretionary and Intervenors' interests may vary from those of Mr. and Mrs. Grant the trial court did not err in granting the petition to intervene.

■ Finally, we will address the issue of whether the trial court erred in reversing the Board's grant of a special exception to Allegheny.[3] Appellants maintain that the electric generating facility is an "essential service" and therefore is permitted as of right or as a special exception in the agricultural zoning district.[4]

Section 190–32 permits essential services in all districts. An essential service is defined in § 190–6 as:

The erection, construction, alteration or maintenance, *by public utilities or municipal or other governmental agencies,* of underground or overhead gas, electrical, steam or water transmission or distribution systems or collection, communication, supply or disposal systems, including poles, wires, mains, drains, sewers, pipes, conduit cables, fire alarm boxes, police call boxes, traffic signals, hydrants and other similar equipment and accessories in connection therewith which are reasonably necessary for the *furnishing of adequate service by such public utilities or municipal or other governmental agencies* or for the public health or safety or general welfare, but not including buildings.

(Emphasis added.)

By definition, an essential service is provided by a public utility, municipal or governmental agency. Here, there is no dispute that Allegheny is neither a public utility, nor a municipal or governmental agency. As such, the proposed electric generating facility is not permitted as of right.[5]

■ The next question is whether the electric generating facility is of the same

---

**3.** Although Appellants argue that the issues raised before the trial court and this court were not raised before the Board, we agree with the trial court that the issues herein raised were the subject of the hearing before the Board.

**4.** The trial court succinctly stated the manner in which a facility such as the one proposed would have been approved prior to deregulation:

Prior to deregulation, if this electric generating facility was proposed to be built by a public utility, the provisions of the zoning ordinance would not have applied. Section 190–32(C) provides that the regulations of the zoning ordinance do not apply to any pro-

posed use by a public utility, so long as the public utility petitioned the Public Utilities Commission and after hearing, obtained approval based upon a determination that the proposed situation of the structure in question was reasonably necessary for the welfare of the public. (*See* 53 P.S. § 10619.)

(Trial court opinion at p. 10, n3.)

**5.** The Board found that the supplying of electricity during peak demand periods by Allegheny constitutes an essential service as defined by the Ordinance. As the trial court stated, this finding is incorrect because Allegheny is not a public utility and as such does not fit the definition of an essential service.

general character as an essential service. Section 190–21b(44) permits a use by special exception if it is of the same general character as any of the uses authorized as permitted uses, conditional uses or special exceptions in the A–1 district, subject to certain criteria.

Appellants argue that the proposed electric generating facility is of the same general character as an essential service. Specifically, as acknowledged by the trial court, the generation of electricity is a necessary part of the electrical transmission, distribution and /or supply system. As such, argue Appellants, the proposed facility is of the same general character as an essential service. However, we agree with the trial court that although electricity generation may be an integral part of the transmission and distribution, it does not follow that the electricity generating facility is a use of the same general character as the transmission or distribution systems referred to in the definition of essential services. One involves production while the other involves distribution.

The definition of essential services encompasses the erection, construction, alteration or maintenance of underground or overhead electrical transmission, distribution or supply systems and the equipment and accessories to be used therewith. The production of electricity does not involve underground or overhead systems but rather requires construction of buildings, smoke stacks and generators. Production of electricity is not of the same general character as the distribution of electricity. Moreover, the definition of essential services excludes buildings, which would need to be constructed for the electric generating facility.[6]

As Appellants correctly state, Pennsylvania courts do not favor interpretation or construction of a zoning ordinance that finds the ordinance to be exclusionary and unconstitutional if a reasonable interpretation of the ordinance would include a use within a given category of uses under the ordinance. *Kratzer v. Board of Supervisors of Fermanagh Township*, 148 Pa. Cmwlth. 454, 611 A.2d 809 (1992). However, no reasonable interpretation of the ordinance in this case would equate production of electricity with distribution of electricity. To the extent that Appellants argue that the Ordinance is exclusionary in that electric generating facilities are not permitted anywhere within the Township, such a claim must first be raised before the Board. *Borough of West Mifflin v. Zoning Hearing Board of the Borough of West Mifflin*, 69 Pa.Cmwlth. 604, 452 A.2d 98 (1982).

Having concluded that the proposed facility is not an essential service permitted as of right or by special exception, we affirm the order of the trial court.[7]

### *ORDER*

Now, June 21, 2001, the order of the Court of Common Pleas of Westmoreland County at No. 2255 of 2000, is affirmed.

Judge KELLEY concurs in the result only.

---

6. Although argued before the Board and trial court that the facility qualifies for a special exception as a "public utility building," Appellants do not raise or pursue this issue in its brief to this court.

7. Because we affirm the trial court's decision that the electric generating facility is not permitted as of right as a necessary service nor is it similar to a necessary service such that it is permitted as a special exception, we need not address the additional theories advanced by the Grant's as to why the granting of the special exception by the Board was in error.