IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Heinzee, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 858 C.D. 2023 |
| | : | Argued: April 8, 2025 |
| Zoning Hearing Board of the | : | |
| Township of Pocono | : | |
| | : | |
| v. | : | |
| | : | |
| Pocono Township and | : | |
| Steven Saslow | : | |


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE WALLACE                                    FILED:  August 12, 2025


Heinzee, LLC  (Landowner) appeals from the July 6, 2023 order of the Court of Common Pleas of Monroe County (Common Pleas) to the extent it affirmed the Zoning Hearing Board (Board) of the Township of Pocono's (Township) decision to deny Landowner's appeal of the Township's enforcement notice alleging Landowner expanded and altered a nonconforming use without obtaining a zoning permit.   Upon careful review, we reverse, in part, Common Pleas' order.

## I.    Background

Landowner operates a public shooting range in the Township on its property located at 2282 Route 314, Henryville, Pennsylvania (Property).   Reproduced

Record (R.R.) at 4a. On May 9, 2022, the Township's Zoning Officer (Zoning Officer) issued Landowner an enforcement notice (Enforcement Notice) alleging Landowner:

1. Established a new use on and/or changed the use and/or expanded/altered an existing non-conforming use of the subject property without first obtaining a Zoning Permit from the Zoning Officer in violation of § 470-121 of the [Township's Zoning Ordinance[1]]. Specifically, you have created an outdoor recreation/entertainment use on the subject property.

2. Established an outdoor recreation/entertainment use in violation of § 470-17 and the Table of Use Regulations within Zoning Districts of [the Township]. The [P]roperty is located in the R1 Zoning District. An outdoor recreation/entertainment use is prohibited within the R1 District.

3. Used and occupied the subject property as an outdoor recreation/entertainment use without first obtaining a Certificate of Use and Occupancy from the Zoning Officer in violation of § 470-122 of the [Ordinance].

*Id.* at 37a. The Enforcement Notice directed Landowner to correct the alleged violations within 30 days or appeal to the Board. *Id.* at 38a. Landowner timely appealed the Enforcement Notice to the Board. *Id.* at 29a-31a.

The Board conducted a public hearing on Landowner's appeal pursuant to Sections 909.1(a)(3) and 908 of the Pennsylvania Municipalities Planning Code (MPC),[2] 53 P.S. §§ 10909.1(a)(3),[3] 10908. At the beginning of the Board's hearing, Steven Saslow (Saslow) requested party status. R.R. at 93a. Through questioning, the Board discovered Saslow lived within approximately 2,900 feet of the Property, could hear shooting from the Property on his property, experienced what he

---

[1]  Township of Pocono, Pa., Zoning Code (2003), *as amended*.
[2]  Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.
[3]  Added by the Act of Dec. 21, 1988, P.L. 1329.

described as a change in use on the Property that affected his peaceful enjoyment of his property, and believed the noise emanating from the Property impeded his efforts to sell his property. *Id.* at 102a-08a. After learning how Saslow may be affected by Landowner's appeal, the Board granted Saslow's request for party status over Landowner's objection. *Id.* at 108a.

The Township then began presenting its case by calling Saslow as its first witness. R.R. at 109a. Saslow explained when he purchased his property in 1988, the shooting range was a small open range, with five or six stalls, where there was occasional shooting, mostly before hunting season. *Id.* at 110a. Saslow testified the range was mostly used by hunters to sight in their guns, but people also used pistols to target shoot at the range. *Id.* at 113a.

Saslow testified that in the "mid to early 2000s," the previous owners placed a berm on the Property, which increased the sound emanating from the Property. R.R. at 114a-16a. Saslow also testified that "in the mid 2000s," the previous owners placed additional shooting stalls on the Property and the volume and types of shooting continued to increase in the 2000s, but that particularly around 2017 or 2018, the number of people using the range greatly increased. *Id.* at 117a-18a. Saslow further testified larger caliber guns, creating significantly more noise and vibration, as well as automatic weapons, began to be used sometime after 2015. *Id.* at 120a-21a. Saslow noticed the amount of people and vehicles increased over these same time periods. *Id.* at 121a-22a.

Zoning Officer also testified for the Township and explained he received multiple complaints from neighboring property owners of loud explosions, machine gun fire, and large crowds on the Property over the previous year. R.R. at 134a. After receiving these complaints, Zoning Officer began investigating the Property,

3

including visiting the Property and making observations. *Id.* Zoning Officer explained his first observations in 2022 did not align with Saslow's description of the Property's use in 1988. *Id.* at 136a. Specifically, Zoning Officer observed "[m]ultiple structures used for firing lanes . . . , large areas of parking, and structures that looked like what could be an office or gun shop and a lot of signage, directional signage, identifying or directing people." *Id.* at 135a-36a.

Zoning Officer stated the Township issued the Property a Certificate of Non-Conformance[4] in 1972, acknowledging the Property was used as a shooting range before the Township's first zoning ordinance. R.R. at 138a, 170a. Zoning Officer also provided the Board with photographs of the Property, showing a "large scale operation" handling "large groups of people." *Id.* at 141a-47a. Zoning Officer provided the Board with printouts from Landowner's website advertising the ability to accommodate groups of 25 to 100 people, even when the range would normally be closed. *Id.* at 321a-23a. Zoning Officer also noted Landowner was advertising its ability to rent a grenade launcher and fully automatic weapons to patrons. *Id.* at 153a-55a.

Zoning Officer also reviewed the Township's databases and provided aerial images of the Property dating back to 2005. R.R. at 147a-48a. Zoning Officer explained the Property "may have" had more enclosed firing lanes, backstops, and larger parking areas in 2015 than it did in 2005. *Id.* at 150a-51a. Zoning Officer did not review aerial images that predated the Ordinance.

Nevertheless, Zoning Officer believed the use of the Property was "altered, changed, and/or expanded" since the Township issued the Certificate of Non-Conformance in 1972. R.R. at 158a. Zoning Officer also believed

---

[4] Although the Ordinance routinely refers to a "nonconforming use," the Township's Application and Certificates are "of Non-Conformance."

Landowner's use of the Property "fundamentally shifted to a different use," which Zoning Officer opined would best qualify as an outdoor recreation or entertainment use under the Ordinance. *Id.* at 160a-62a. The Ordinance prohibits such a use in residential districts. *Id.* at 162a.

Zoning Officer admitted the Township's files did not contain the 2018 Certificate of Non-Conformance for the Property and he had never seen this Certificate before the Board's hearing. R.R. at 165a-66a. Still, Zoning Officer agreed the Township issued Landowner a Certificate of Non-Conformance in 2018. *Id.* Zoning Officer acknowledged the Ordinance does not define an outdoor recreation and entertainment use or an outdoor shooting range, nor does the Ordinance have a use category for outdoor shooting ranges. *Id.* at 169a-70a. In addition, Zoning Officer explained his interpretation of what constitutes an outdoor shooting range was based on his personal understanding of a shooting range being used to sight in rifles for deer season. *Id.* at 176a.

Anton Bonifacic, Jr. (Bonifacic), a former owner of the Property, testified on Landowner's behalf. R.R. at 223a. He explained he first visited the Property, called McCool's Gun Company at the time, to shoot guns as a nine-year-old child. *Id.* at 224a. Bonifacic's father ultimately purchased the Property in 1973, when the previous owner was operating the Property as a public shooting range where patrons could rent a gun or bring their own guns. *Id.* at 225a-27a. Bonifacic explained the shooting range "was pretty popular back then with honeymooners," and that one of the local resorts had an agreement with the previous owner to bring large groups to the Property. *Id.* at 226a.

Bonifacic provided newspaper articles from 1977 and 1978 showing that patrons shot a 37-millimeter cannon (firing blanks) on the Property and Bonifacic's

father hosted demonstrations of military weapons, including a gatling gun (a type of early machine gun), AR-15s (semi-automatic rifles), pistols, muskets, and black powder cannons. R.R. at 10a-13a, 229a-31a. Bonifacic also provide photographs of cannons and fully automatic weapons being operated at the Property in 1976. *Id.* at 14a-22a, 236a-37a. Bonifacic explained his father owned two cannons, which were "fired as part of entertainment for the guests" on a fairly regular basis. *Id.* at 238a-39a.

Bonifacic purchased the Property from his father in 1993 and continued to operate a public shooting range seven days per week from 10:00 a.m. to 6:00 p.m., as had been done since at least 1973. R.R. at 231a-32a. Bonifacic used a different cannon after he purchased the Property, which "made a big bang and a lot of smoke." *Id.* at 240a. Bonifacic heavily advertised the shooting range, using brochures, matchbooks, television commercials, and a website. *Id.* at 240a-41a. He also accommodated large groups at the shooting range and offered lessons for National Rifle Association certification courses. *Id.* at 242a, 270a.

Bonifacic sold the Property to Landowner in 2018. R.R. at 243a. He visited the Property on Memorial Day in 2022 and observed the current operations on the Property. *Id.* at 244a. Bonifacic testified that there was no real difference in the operation of the Property now as compared to when he and his father owned the Property. *Id.* at 245a. Bonifacic stated the business grew in terms of the number of shooters from the time it was McCool's Gun Company through his father's and his ownership. *Id.* at 248a. This growth was particularly pronounced after the events of September 11, 2001, when he began to have 40 to 50 people shooting on weekdays and 200 to 400 people shooting on weekend days. *Id.* at 272a-74a. At his high point, Bonifacic had 47 employees. *Id.* at 274a-75a.

Bonifacic conceded neither he nor his father rented fully automatic weapons to patrons, but they did rent patrons semi-automatic versions of fully automatic weapons and occasionally permitted patrons to bring their own fully automatic weapons. *Id.* at 250a-55a, 269a. Bonifacic also conceded the Civil War reenactments he and his father hosted on the Property would only occur on one weekend per year. *Id.* at 251a. Finally, Bonifacic stated he did not frequently entertain large groups, and his largest group was approximately 35 people. *Id.* at 259a-60a.

Alan Ornoski (Ornoski), a retired Lieutenant Colonel in the United States Army, also testified on Landowner's behalf. R.R. at 276a. Ornoski was formerly responsible for operating 35 shooting ranges for the military. *Id.* at 277a. Ornoski began shooting on the Property sometime between 2004 and 2005, and he has shot his own guns as well as rented weapons at the Property. *Id.* at 280a. Ornoski stated the Property is currently being operated in a very similar way to how it was operated when he first visited it. *Id.* at 281a. Nevertheless, he admitted he could not rent a fully automatic weapon at the Property until recently. *Id.* at 290a-91a.

Finally, a Township employee testified on Landowner's behalf regarding the Township's Amusement Tax Ordinance, which the Township adopted in August 2018. R.R. at 352a-62a. The tax, which is collected by the Township, applies to outdoor amusement facilities that charge admission. *Id.* at 367a. The Township has levied this tax on the Property since 2020. *Id.* at 367a, 374a.

At the conclusion of its hearings, the Board voted to deny Landowner's appeal of the Enforcement Notice. In its written decision, the Board determined the 2018 Certificate of Non-Conformance "was only an acknowledgement of the existence of the use of the . . . Property . . . as of 2003," when the Township enacted the

Ordinance. R.R. at 419a-20a. Thus, the Board examined whether Landowner expanded or altered the use of the Property since 2003. *Id.* The Board disagreed with Bonifacic's assessment that the use of the Property had not changed since his ownership. "In sum, the Board believed [Landowner's] use of the . . . Property underwent a change, expansion and alteration in recent times from a '[p]ublic shooting range, related offices and parking, and commercial retail sales, including gun sales' to something else." *Id.* at 421a (quoting the 2018 Certificate of Nonconforming Use). Because Landowner did not request a permit for the expansion and alteration of its use of the Property, the Board determined Landowner expanded and altered its use in violation of Section 470-32(C)(1) of the Ordinance.[5]

The Board next noted the Ordinance does not define what constitutes an outdoor recreation and entertainment use. R.R. at 422a. Nevertheless, the Board determined "the Zoning Officer met his burden of demonstrating that the [Property] had evolved and changed so dramatically over recent years as to constitute an entirely new use, which the Zoning Officer identified as outdoor entertainment." *Id.* Because the Board determined Landowner was engaged in a new use of the Property, the Board also concluded Landowner violated the Ordinance by not obtaining a Certificate of Use and Occupancy before engaging in its new use of the Property. *Id.* at 423a.

Landowner appealed the Board's decision to Common Pleas, which affirmed the Board's determination that Landowner expanded and altered the nonconforming

---

[5] Section 470-32(C)(1) of the Ordinance provides:
> C. Any nonconforming use may be continued indefinitely, provided that any such use:
>> (1) Shall not be enlarged, altered, extended, reestablished, restored, or placed on a different portion of the lot or parcel of land occupied by such use on the effective date of this chapter, without a special exception from the Zoning Hearing Board.

use on the Property. R.R. at 508a. Regarding a change in use, however, Common Pleas determined "the evidence showed that [the Property] had a very similar firing range to the one that existed when McCool and the Bon[i]facics operated it." *Id.* at 510a. Common Pleas also determined the "evidence did not establish that . . . outdoor entertainment [other than an outdoor shooting range] is being offered on the [P]roperty." *Id.* Therefore, Common Pleas reversed the Board's determination that Landowner changed the use of the Property, thereby sustaining Landowner's appeal of the second and third violations alleged in the Enforcement Notice. *Id.* at 511a.

Landowner appealed Common Pleas' decision to the extent Common Pleas determined Landowner expanded and altered the nonconforming use of the Property and upheld the first violation in the Enforcement Notice. Neither the Township, nor Saslow, filed a cross-appeal or argued Common Pleas erred in reversing the remainder of the Board's decision, thereby sustaining Landowner's appeal of the second and third violations in the Enforcement Notice. As a result, we affirm Common Pleas' order regarding these two violations and accept that Landowner has not changed the use of the Property to an outdoor recreation or entertainment use.

## II. Issues

Landowner presents the following four issues[6] for our review: whether the Board committed an error of law and abuse of discretion in (1) permitting Saslow to intervene as a party; (2) determining Landowner expanded and altered its nonconforming use; (3) failing to recognize its vested rights as a result of the Township's 2018 Certificate of Non-Conformance; and (4) determining the Township sustained its burden of proof.

---

[6] We have reorganized Landowner's issues for clarity and ease of analysis.

9

## III.    Analysis

Because "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing the [Board]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). We evaluate whether the Board committed an error of law, violated the appellant's constitutional rights, or violated agency policy and procedure. *See* 2 Pa.C.S. § 754. In addition, we evaluate whether substantial evidence supports the Board's findings of fact. *Id.* To determine whether the Board committed an error of law, "our standard of review is *de novo* and our scope of review is plenary. *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). "In other words, we do not defer to the [Board's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024).

### A. Intervention

Landowner's first issue is whether the Board committed an error of law and abuse of discretion in permitting Saslow to intervene as a party. Landowner essentially argues that because this is an enforcement action which the Township brought under its police powers, this dispute should only be between Landowner and the Township. Thus, Landowner asserts third parties should not be permitted to intervene in enforcement actions. Section 908(3) of the MPC, however, which applies to *all* hearings before zoning hearing boards, provides:

> The Parties to [hearings before a zoning hearing board] shall be the municipality, **any person affected by the application who has made timely appearance of record before the board, and any other person** including civic or community organizations **permitted to appear by the board.** The board shall have power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose.

10

53 P.S. § 10908(3) (emphasis added). As the Pennsylvania Supreme Court recently noted, Section 908(3)'s "'any other person' language is quite broad." *See South Bethlehem Assocs., LP v. Zoning Hearing Bd. of Bethlehem Twp.*, 294 A.3d 441, 445-46 (noting the standard for standing to appeal a zoning hearing board's decision to a court is higher than the standard for participating in the zoning hearing board's hearing and positing that it may be possible "the General Assembly wanted to avoid the need for mini-hearings on aggrievement before local zoning boards" and "wanted to allow for a broad range of views for and against the relief sought without regard to aggrievement").

Here, Saslow explained he lived approximately 2,800 to 2,900 feet away from the Property, could hear shooting on the Property from his property, had experienced what he considered a change in the use of the Property during his ownership of his property, and was impeded from selling his property by the noise emanating from the Property. R.R. at 102a-08a. We agree with the Board that Saslow established he was affected by Landowner's appeal. *See Grant v. Zoning Hearing Bd. of the Twp. of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001) (even when evaluating the heightened aggrievement standard for standing to appeal to a court, property owners whose property was 6,600 feet from a proposed wind turbine site were aggrieved because "wind and sound from the proposed site flow to their land"). Thus, we conclude the Board did not err in granting Saslow party status at its hearings in this matter.[7]

---

[7] Saslow's ability to intervene is limited to hearings before the Board under Section 908(3) of the MPC. Saslow would not be permitted to initiate an enforcement proceeding against Landowner, nor to intervene in any criminal proceedings against Landowner.

11

**B. Expansion and Alteration of Nonconforming Use**

Landowner's second issue is whether the Board committed an error of law and abuse of discretion in determining Landowner expanded and altered its nonconforming use. The Township concedes that when it adopted the Ordinance in 2003 the Property was used as a "public shooting range, related offices and parking, and commercial retail sales, including gun sales." R.R. at 4a-5a. As a result, the previous owner's use of the Property, as it existed in 2003, is a lawful nonconforming use under the Ordinance, and the Township, in this enforcement action, had the burden of proving Landowner expanded and altered that use after the Township adopted the Ordinance in 2003. *See* Section 616.1(d) of the MPC, 53 P.S. § 10616.1(d), added by the Act of Dec. 21, 1988, P.L. 1329.

Relative to the Township's burden of proof, the Zoning Officer had only recently become aware of the Property and observed its use. The Zoning Officer did, however, review aerial photographs from the Township's records which he believed may have shown changes to the Property between 2005 and 2018, although not conclusively. *See* R.R. at 147a-52a. For his part, Saslow testified a new berm was placed on the Property and additional shooting stalls were installed, but Saslow could not point to a particular year in the 2000s when the previous owner made these changes. *See id.* at 114a-17a. Saslow also testified that sometime in the 2000s the volume and types of shooting increased, but that particularly around 2017 or 2018, the number of people using the range greatly increased. *Id.* at 117a-18a.

This evidence is insufficient to prove Landowner expanded or altered its use on the Property. The Property was historically used as a public shooting range. Landowner is still using the Property as a public shooting range, utilizing the same firing lane that has historically been used on the Property. The Township

12

acknowledged this use existed before its Ordinance in the Certificates of Non-Conformance, without limitations as to the hours of operation or the number of patrons.[8]  While the exact method Landowner uses to implement its public shooting range may not be identical to the method employed in the past, Landowner's use of the property has not expanded or altered from that of a public shooting range.[9]  Thus, we conclude the Board committed an error of law in determining Landowner expanded or altered the use of the Property.

## IV.    Conclusion

For the reasons set forth above, we reverse Common Pleas' decision to the extent it affirmed the Board's determination Landowner expanded and altered its nonconforming use in violation of the Ordinance.  Because the Township and Saslow did not file a cross-appeal or argue Common Pleas erred in reversing the Board's determination that Landowner changed the use of the property to an outdoor recreation or entertainment use, we affirm these aspects of Common Pleas' order.  As a result, Landowner's appeal of the Township's May 9, 2022 Enforcement Notice is sustained in all respects.

_____
STACY WALLACE, Judge

---

[8]   The Township has not enacted any ordinances limiting the hours of operation of businesses or the level of noise emanating from businesses.  *See* R.R. at 115a.
[9]   Because Landowner prevails on its second issue on appeal, we need not reach Landowner's third and fourth issues on appeal.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heinzee, LLC,                  :
              Appellant     :
                                    :
          v.                  : No. 858 C.D. 2023
                                    :
Zoning Hearing Board of the     :
Township of Pocono             :
                                    :
          v.                  :
                                    :
Pocono Township and          :
Steven Saslow                 :

# **O R D E R**

**AND NOW**, this 12th day of August 2025, the Court of Common Pleas of Monroe County's July 6, 2023 order is **REVERSED** to the extent it affirmed the Zoning Hearing Board (Board) of the Township of Pocono's (Township) December 19, 2022 decision and **AFFIRMED** to the extent it reversed the Board's December 19, 2022 decision.

 

_____
STACY WALLACE, Judge
