IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Veterans Way Solar 1, LLC,        :
                Appellant   :
                              :
      v.                 : No. 73 C.D. 2025
                              : Submitted: April 13, 2026
Tyrone Township Zoning     :
Hearing Board           :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                       FILED: June 1, 2026

Veterans Way Solar 1, LLC (Applicant) appeals from the order of the Court of Common Pleas of the 41st Judicial District, Perry County Branch (Common Pleas), dated December 30, 2024, which denied Applicant's appeal from the decision of the Tyrone Township (Township) Zoning Hearing Board (Board). After careful review, we affirm.

**BACKGROUND**

This matter involves Applicant's proposal to construct an "agri-voltaic system [(System)] that combines agricultural benefits and solar energy production" on a 30-acre site in the Township's Agricultural/Residential District (District). Reproduced Record (R.R.) at 1-2. The record describes the System as a solar farm, which would also include "some form of agriculture." *Id.* at 70. Specifically, "the property owner

has requested pollinator plants to be grown there." *Id.* The Township zoning officer denied Applicant's zoning application because the System was not a permitted use in the District under the Township Zoning Ordinance (Ordinance).[1] *Id.* at 1. Applicant appealed to the Board, which held hearings on October 24, 2022, and December 21, 2022.[2] *Id.* The Board also denied Applicant's application. *Id.* at 3.

Applicant appealed to Common Pleas, which concluded the Township zoning officer was simultaneously serving as a township supervisor in violation of Section 614 of the Pennsylvania Municipalities Planning Code (MPC).[3] R.R. at 48. By order dated December 22, 2023, Common Pleas remanded the case to the Township so that a "properly appointed" zoning officer could review the application. *Id.* at 45.

Thereafter, on January 12, 2024, a different Township zoning officer granted Applicant's application. R.R. at 67. The zoning officer concluded the System was a "Public Utility Facility" under Section 204 of the Ordinance because it "is a structure and related equipment for the transmission and exchange of power." *Id.* Moreover, the zoning officer concluded a "Public Utility Facility" was permitted in any zoning district under Section 1502(Y) of the Ordinance, subject to regulations for buildings or structures. *Id.*

The Township appealed the zoning officer's decision to the Board, contending the System could not be a "Public Utility Facility" because Applicant is not a public utility. R.R. at 69. The Board held a hearing on April 16, 2024, and agreed with the Township's reasoning. *Id.* at 69-70. The Board expressed concern that the System

---

[1] Township of Tyrone, Pa., Zoning Ordinance.

[2] The Board's order erroneously states the first hearing occurred on November 24, 2022. *See* R.R. at 1.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10614 (providing, pertinently, that a zoning officer "shall not hold any elective office in the municipality").

2

would not be subject to the "regulatory oversight a [p]ublic [u]tility would have" and observed that "if any entity could install such a facility, they could simply run private lines to neighbors and there would be no control over the owner." *Id.*

Applicant appealed to Common Pleas, which denied the appeal by order dated December 30, 2024. R.R. at 184. Common Pleas also reasoned Applicant was not a public utility and, thus, the System was not a "Public Utility Facility." *Id.* Applicant appealed to this Court. In its opinion in response to Applicant's concise statement of errors complained of on appeal, Common Pleas explained it erred by concluding the System could not be a "Public Utility Facility" if Applicant was not a public utility. *Id.* at 203-04. Common Pleas reasoned that "there could certainly be circumstances where a landowner, business, or other private entity could seek to erect structures or equipment to expand utility service." *Id.* at 203. Instead, Common Pleas explained a "Public Utility Facility" is one that is necessary for the transmission and exchange of power, and the intent of the Ordinance was to permit construction of structures and equipment "needed to provide or expand utility service throughout the [T]ownship." *Id.* at 201-02. Common Pleas continued:

> But, [Applicant] is not asking to erect structures and equipment to expand the existing utility service. They are asking to construct facilities to generate electricity through the construction of solar panels, which would then be sold to customers through the existing power grid. Admittedly, the electricity generated by the solar panels would be transmitted via electric lines erected on the property to the existing power grid owned by PPL Electric. Therefore, the zoning officer found that this land use was permitted.
>
> It is clear, however, that the primary purpose of the solar farm is not to transmit and exchange power, but to produce it. Transmission of that produced energy to the existing power grid is secondary. Without the initial generation of the power, there is no need to transmit it anywhere. In fact, no structures, lines, or other equipment would

3

need to be installed on the subject property if power was not first being produced by the solar panels proposed to be installed upon the land.

     Given the unambiguous language of the ordinances, this is not the type of project intended to be permitted. [Applicant's] reading of the definition of public utility facility would allow for the construction of a coal fired, gas fired, or nuclear-powered electrical plant in any district of [the] Township if that produced power would be transmitted by a line to the existing power grid. This is an absurd result, and is simply not what was intended by the ordinance drafters given the clear language indicating that a permitted public utility facility is a structure and its equipment necessary for transmission and exchange of power— not generation of power. . . .

*Id.* at 202-03 (citations omitted, underlining in original). As a final matter, Common Pleas addressed Applicant's argument that the Township and Board made a judicial admission that the System was a "Public Utility Facility." *Id.* at 204. Common Pleas explained judicial admissions involve questions of fact rather than questions of law, such as the correct interpretation of the Ordinance. *Id.*

On appeal to this Court, Applicant contends the System will use structures and equipment to provide power to the public power grid, bringing the System within the Ordinance's definition of "Public Utility Facility." Applicant's Br. at 15-18. To the extent doubt exists as to the meaning of "Public Utility Facility," Applicant contends we should construe this term in favor of the landowner and the least restrictive use of the land. *Id.* at 18. Applicant challenges the Board's analysis, asserting that it failed to explain why the zoning officer's interpretation was incorrect or apply the language of the Ordinance, and that no evidence supports the Board's concerns regarding lack of oversight for the System. *Id.* at 22-23. In addition, Applicant contends the Board and Township "judicially admitted" that the System was a "Public Utility Facility." *Id.* at 19. Applicant cites to the Board's first decision denying its application and the

4

Township's arguments before Common Pleas on appeal from the decision. *Id.* at 20-21.

**DISCUSSION**

Common Pleas did not take additional evidence below. Thus, our review "is limited to determining whether [the Board] abused its discretion or erred as a matter of law." *Bird v. Zoning Hearing Bd. of Mun. of Bethel Park*, 320 A.3d 843, 848 n.8 (Pa. Cmwlth. 2024), *appeal denied*, 333 A.3d 303 (Pa. 2025). We will find an abuse of discretion if substantial evidence does not support the Board's findings of fact. *Id.* To the extent Applicant's appeal requires us to interpret the Ordinance, this raises "a question of law for which our standard of review is de novo and our scope of review is plenary." *Weiler v. Stroud Twp. Zoning Hearing Bd.*, 300 A.3d 1121, 1126 (Pa. Cmwlth. 2023), *reargument denied* (Sept. 20, 2023), *appeal denied*, 318 A.3d 100 (Pa. 2024). Stated differently, this Court does not defer to decisions below and may review the entire record in reaching its determination. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1082 (Pa. 2012).

By way of background, case law provides that a municipality may not regulate the operations of a public utility without an express statutory authorization. *Twp. of Marple v. Pa. Pub. Util. Comm'n*, 294 A.3d 965, 972 (Pa. Cmwlth. 2023) (en banc). Instead, the Public Utility Commission has "preeminent authority to regulate utilities on a statewide basis." *Id.* Municipalities "are ill-equipped to comprehend the needs of the public beyond their jurisdiction" and would exercise the authority to regulate public utilities "with an eye toward the local situation and not with the best interests of the public at large as the point of reference." *Id.* at 971 (quoting *Duquesne Light Co. v. Upper St. Clair Twp.*, 105 A.2d 287, 293 (Pa. 1954)). If municipalities had the authority to regulate "electric wires, pipe lines and oil lines, the conveyors of power

5

and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state." *Id.* (quoting *Cnty. of Chester v. Phila. Elec. Co.*, 218 A.2d 331, 333 (Pa. 1966)).

An exception to this rule exists regarding public utility buildings. Section 619 of the MPC provides:

> This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public. It shall be the responsibility of the Pennsylvania Public Utility Commission to ensure that both the corporation and the municipality in which the building or proposed building is located have notice of the hearing and are granted an opportunity to appear, present witnesses, cross-examine witnesses presented by other parties and otherwise exercise the rights of a party to the proceedings.

53 P.S. § 10619. *See also Del. Riverkeeper Network v. Sunoco Pipeline L.P.*, 179 A.3d 670, 695 (Pa. Cmwlth. 2018) (en banc) (explaining "[o]ur Supreme Court holds that this provision does not grant municipalities an implied right to zone with regard to public utility facilities other than described buildings").

Here, Applicant does not dispute that it is not a public utility, nor does it argue the rule prohibiting municipalities from regulating the operations of a public utility should apply.[4] Rather, Applicant contends the specific language of the Ordinance is

---

[4] Although the Ordinance defines the term "Public Utility Facility," our review does not indicate it defines the term "Public Utility." Our Supreme Court has explained:

> [W]hen zoning ordinances fail to define the term "public utilities," the term shall be understood to mean any business activity regulated by a government agency in which the business is required by law to: 1) serve all members of the public upon reasonable request; 2) charge just and reasonable rates subject to review by a

**(Footnote continued on next page…)**

6

"broad and expansive" and applies even though it is not a public utility. Applicant's Br. at 18. The Ordinance provides that a "Public Utility Facility" is permitted in any district in the Township, subject to regulations for buildings or structures:

> Y. Public Utility Facilities: Public utility facilities shall be permitted in any district without regard to the use and area regulations; provided, however, that buildings or structures erected for these utilities shall be subject to the following regulations:
>
> 1. Front, side, and rear yards shall be provided in accordance with the regulations of the district in which the facility is located.
>
> 2. Height restrictions shall be as required by the district regulations.
>
> 3. Unhoused equipment shall be enclosed within a chain link fence six (6) feet in height topped with barbed wire.
>
> 4. Housed equipment. When the equipment is totally enclosed within a building, no fence or screen planting shall be required and the yards shall be maintained in accordance with the district in which the facility is located.
>
> 5. Screen planting in Residential and Commercial Districts shall be completed in accordance with Section 1406 of this Article.
>
> 6. The external design of the building shall be in conformity with the buildings in the district.

---

regulatory body; 3) file tariffs specifying all of its charges; and 4) modify or discontinue its service only with the approval of the regulatory agency.

*Crown Commc'ns v. Zoning Hearing Bd. of the Borough of Glenfield*, 705 A.2d 427, 431-32 (Pa. 1997).

Section 1502(Y) of the Ordinance. In relevant part, the Ordinance defines the term "Public Utility Facility" as "[a] structure and its equipment, where necessary, for the transmission and exchange of . . . power." Section 204 of the Ordinance.

The Board determined the System was not a "Public Utility Facility" because Applicant was not a public utility. Common Pleas made the same determination, at least initially. This Court's precedent supports the proposition that a "Public Utility Facility" need not be operated by a public utility. In *Tink-Wig Mountain Lake Forest Property Owners' Association v. Lackawaxen Township Zoning Hearing Board*, 986 A.2d 935 (Pa. Cmwlth. 2009), this Court affirmed a zoning hearing board's decision that a wind turbine constructed for personal use on private property was an "essential service" under the relevant ordinance. The ordinance defined "essential services" as "[p]ublic utility facilities that do not require enclosure in a building, including" such facilities as "gas, electrical, steam, telephone, sewage treatment plants and collection systems, or water distribution systems." *Id.* at 942. We reasoned as follows:

> [W]hile it appears that the definition of "essential services" does not specifically allow for such services to be provided by an individual, it does not prohibit such services either. The trial court deferred to the [zoning hearing b]oard, as it determined it was required to do by law, because it concluded that the [zoning hearing b]oard had not abused its discretion. Additionally, we note that the [t]ownship did not base its permit approval on the terms "public utility facility" and "essential services", as these terms were not used prior to the . . . appeal to the [zoning hearing b]oard. The terms were first raised . . . during the cross-examination of Mr. Cammerino, the [t]ownship [z]oning [o]fficer, who was asked if he would consider the proposed wind turbine as an "essential service" and, thus, as an accessory use pursuant to the [o]rdinance. In response, Mr. Cammerino replied that he did think that the proposed wind turbine met the [o]rdinance's definition of both an essential service and a public utility.

*Id.* at 942-43 (citation omitted).

8

The specific language of the Ordinance in this matter, however, renders *Tink-Wig* readily distinguishable. As Common Pleas reasoned, the Ordinance's definition of "Public Utility Facility" directs that such a facility must be used for "transmission and exchange" of power, among other things, and does not apply to power generation facilities. *See* Section 204 of the Ordinance. There appears to be no dispute that the System would include electric lines for "transmission and exchange" of power from its solar panels to the power grid. R.R. at 202. Although electric lines and associated structures or equipment standing alone might meet the definition of a "Public Utility Facility," their presence on the property does not bring the solar panels or the System as a whole within this definition.[5]

In this regard, our decision in *Grant v. Zoning Hearing Board of the Township of Penn*, 776 A.2d 356 (Pa. Cmwlth. 2001), is instructive. That decision involved an application to construct a power generation facility in an agricultural zoning district. *Id.* at 357. The proposed facility would include "natural gas fired combustion turbine generators" and "generate electricity that would be transferred to an existing electric transmission and distribution substation adjacent to the site," which was operated by a public utility. *Id.* at 357-58. This Court determined the facility was not permitted as an "essential service," which the ordinance defined to include the construction of "underground or overhead . . . electrical . . . transmission or distribution systems" or supply systems by a public utility or a municipal or governmental agency. *Id.* at 360.

---

[5] In further support of this conclusion, we note the Ordinance permits "[s]olar collectors and solar-related equipment . . . *as an appurtenance to a building or as a detached accessory structure*." Section 1502(AA) of the Ordinance (emphasis added). The requirement that solar collectors and equipment be an appurtenance to a building or detached accessory structure shows the drafters of the Ordinance intended to allow these items only when they were subordinate to another permitted use and would not have intended to allow solar farms, like the System, through a broad reading of the language defining a "Public Utility Facility."

9

We explained it was undisputed the applicant was not a public utility or a municipal or governmental agency. *Id.*

This Court then considered whether the facility would be "of the same general character as an essential service," which would have permitted the facility by special exception. *Grant*, 776 A.2d at 360-61. We reasoned:

> [A]s acknowledged by the trial court, the generation of electricity is a necessary part of the electrical transmission, distribution and /or supply system. As such, argue [the a]ppellants, the proposed facility is of the same general character as an essential service. However, we agree with the trial court that although electricity generation may be an integral part of the transmission and distribution, it does not follow that the electricity generating facility is a use of the same general character as the transmission or distribution systems referred to in the definition of essential services. One involves production while the other involves distribution.

*Id.* at 361. In part, we emphasized the difference between transmitting, distributing, and supplying electricity through "underground or overhead systems" and producing electricity, which involved "construction of buildings, smoke stacks and generators." *Id.*

Even accepting for the sake of argument that the Ordinance is ambiguous, we would conclude Applicant is not entitled to relief. When an ordinance is ambiguous, "the legislative body's intent may be ascertained by considering, among other things, the ordinance's goal, the consequences of a particular interpretation of the ordinance, and interpretations of the ordinance by an administrative agency." *Bailey v. Zoning Bd. of Adjustment of the City of Phila.*, 801 A.2d 492, 502 (Pa. 2002). In addition, we presume the legislative body did not intend an absurd or unreasonable result. *Id.*

It is likely that the Ordinance's goal in permitting a "Public Utility Facility" in any district was to memorialize the general rule, discussed above, that a municipality

may not regulate the operations of a public utility. This would also explain why the Ordinance provides regulations for buildings or structures, i.e., a municipality may regulate a public utility building subject to the procedure at Section 619 of the MPC. Once again, Applicant does not dispute that it is not a public utility, nor does it argue the general rule should apply.

To conclude otherwise would also create an absurd result. As Common Pleas reasoned, accepting Applicant's interpretation would potentially permit construction of a privately-owned power plant "in any district in [the] Township if that produced power would be transmitted by a line to the existing power grid." R.R. at 203. It is particularly unlikely that the drafters of the Ordinance would have chosen to permit such facilities in the District, given that the Ordinance expressly restricts the District to "agricultural and related land uses and low-density residential uses." Section 601 of the Ordinance.[6]

Finally, we address Applicant's contention that the Board and Township made a judicial admission that the System was a "Public Utility Facility." The Board based its initial decision denying the application on the conclusion that the System was not permitted under Section 106 of the Ordinance as a "Use[] Not Provided For."[7] R.R.

---

[6] Applicant points to other relevant factors when interpreting an ordinance, including deference to the zoning officer's interpretation and construing an ordinance in favor of the landowner. *See Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968-69 (Pa. Cmwlth. 2015). In this matter, we conclude avoiding an absurd result is the most salient factor in our analysis. *See Appeal of Eureka Stone Quarry, Inc.*, 539 A.2d 1375, 1380 (Pa. Cmwlth. 1988) (reasoning that although ambiguity in an ordinance must generally be resolved in favor of the landowner, "we do not assume that the draftsmen of [the ordinance] intended a result that is absurd and impossible of execution").

[7] The Board applied the following language:

[W]henever, in any [d]istrict established under this Ordinance, a use is neither specifically permitted or denied and any application is made by a property owner

**(Footnote continued on next page…)**

11

at 2-3. The Board explained the use was "provided for" in that the System qualified as an "[e]lectric and telephone public utility transmission and distribution facilit[y]," which was a permitted use in both the Commercial and Industrial Districts. *Id.* at 3. Moreover, the Township argued in support of the Board's decision that "it is clear by definition that [Applicant] is a Public Utility Facility as they are creating a structure for transmission of energy." *Id.* at 12.

The Board and Township have taken seemingly inconsistent positions in these proceedings, initially arguing the System was not permitted in the District because it *was* a "Public Utility Facility" and then later arguing the System was not permitted in the District because it *was not* a "Public Utility Facility." Nonetheless, inconsistency by itself does not result in a judicial admission. This Court has explained:

> [A] judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission, and may be contained in the pleadings, stipulations and other like documents. A judicial admission must be a clear and unequivocal admission of fact.

*Sch. Dist. of Phila. v. Bd. of Revision of Taxes*, 217 A.3d 472, 485 (Pa. Cmwlth. 2019) (citations and quotation marks omitted). We agree with Common Pleas that the correct interpretation of the Ordinance and the term "Public Utility Facility" is a question of law, rather than fact. *See Wexford Sci. & Tech., LLC v. City of Pittsburgh*

---

to the Zoning Officer for such use, the Zoning Officer shall refer the application to the . . . Board which shall have the authority to permit the use or deny the use. The use may be permitted if it is similar to and compatible with permitted uses in the [d]istrict and in no way is in conflict with the general purpose and intent of this Ordinance.

Section 106 of the Ordinance.

12

*Zoning Bd. of Adjustment*, 280 A.3d 1097, 1102 (Pa. Cmwlth. 2022). Thus, it cannot be the subject of a judicial admission.[8]

## CONCLUSION

For the foregoing reasons, the Board and Common Pleas correctly determined the System was not permitted as a "Public Utility Facility" under the Ordinance, and we affirm Common Pleas' order dated December 30, 2024.

_____
STACY WALLACE, Judge

---

[8] We would be remiss not to note that Applicant argued it was *not* a "Public Utility Facility" during the first appeal to Common Pleas. Applicant's Reply Br. (Common Pleas), 8/3/23, at 2 (arguing Applicant "cannot be a 'public utility facility' if it is not a 'public utility'"). Therefore, Applicant's argument cuts both ways.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Veterans Way Solar 1, LLC,       :
                    Appellant     :
                                     :
           v.                   : No. 73 C.D. 2025
                                     :
Tyrone Township Zoning       :
Hearing Board                  :

# **O R D E R**

    **AND NOW**, this 1st day of June 2026, the order of the Court of Common Pleas of the 41st Judicial District, Perry County Branch, dated December 30, 2024, is **AFFIRMED**.


                                       _____
                                       STACY WALLACE, Judge